LEO J. LaMORRE *vs.* SUPERINTENDENT OF BRIDGEWATER STATE HOSPITAL.

Suffolk. April 6, 1964. — June 1, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Sex Offender. Practice, Civil,* Sex offender, Assistance of counsel. *Constitutional Law,* Due process of law, Sex offender, Assistance of counsel.

A commitment of one to a treatment center pursuant to G. L. c. 123A, § 6, upon a finding that he was a sexually dangerous person was not invalid by reason of the fact that he was not a prisoner under sentence at the time of such finding and commitment where it appeared that the commitment proceeding had been properly commenced while he was a prisoner under sentence. [536–537]

Paragraph five of § 6 of G. L. c. 123A provides for maintaining custody of one made subject to a proceeding under § 6 throughout the hearing on the question whether he is a sexually dangerous person, and indicates that the proceeding, once properly commenced against a prisoner under sentence, shall continue even though he has ceased to be a prisoner; use of the word "prisoner" in paragraph six of § 6 does not limit the applicability of paragraph six. [537–538]

One committed to a treatment center as a sexually dangerous person in a proceeding under G. L. c. 123A, § 6, was not denied due process of law by reason of the fact that he was not represented by counsel on three occasions during preliminary steps of the proceeding where it did not appear that he was indigent or had requested and been denied counsel and it did appear that he had been represented by counsel before and at the court hearing which resulted in the determination that he was a sexually dangerous person and must be committed. [538–539]

PETITION for a writ of habeas corpus filed in the Supreme Judicial Court for the county of Suffolk on December 20, 1962.

The case was reserved and reported by *Kirk, J.,* without decision.

*Ronald J. Chisholm* for the petitioner.

*James W. Bailey,* Assistant Attorney General, for the respondent.

SPALDING, J. Having been committed to the treatment center at the Massachusetts Correctional Institution (M.C.I.) at Bridgewater, the petitioner brought this petition for a writ of habeas corpus in the county court to obtain his release.

On the basis of facts stipulated by the parties the single justice found as follows: "On October 5, 1959, the petitioner pleaded guilty to [an] indictment . . . [for] Indecent Assault & Battery . . . and [an] indictment . . . [for] Open & Gross Lewdness . . . in the Middlesex Superior Court and was sentenced . . . to 2½–3 years at the Massachusetts Correctional Institution at Walpole on each indictment to be served concurrently. On October 5, 1959, after the petitioner pleaded guilty but prior to the imposition of sentences, the District Attorney of Middlesex County filed a petition to have the petitioner committed to the Treatment Center at M.C.I., Bridgewater for a period of observation in accordance with the provisions of G. L. c. 123A. This petition was denied . . . . The petitioner [on that occasion] was represented by counsel.

"On July 7, 1961, in the [Middlesex] Superior Court . . . a petition (dated May 16, 1960) . . . was filed by . . . [the] Superintendent, M.C.I. Walpole, to have the petitioner committed to the Treatment Center for a period not exceeding 60 days for examination and diagnosis in accordance with Section 6 of Chapter 123A as amended. On July 7, 1961, the petitioner was ordered to be transferred from M.C.I. Walpole to the Treatment Center . . . for a period not exceeding 60 days.

"On August 3, 1961, a report was filed in the Middlesex Superior Court in which the psychiatrists stated that in

their opinion the petitioner was a sexually dangerous person as defined by law. . . . [On the same day] the District Attorney of Middlesex County filed a petition under the provisions of G. L. c. 123A for a speedy hearing . . . [and] the petitioner was ordered to be discharged from the Treatment Center . . . and returned to M.C.I. Walpole . . . .

"On August 4, 1961, the petitioner appeared in the Superior Court in Middlesex County . . . . The District Attorney's petition for a speedy hearing was allowed. The petitioner was committed to the custody of the sheriff in Cambridge by a warrant dated August 4, 1961, to answer to a petition for commitment to the Treatment Center as a sexually dangerous person . . . .[1]

"On August 7, 1961, an appearance was filed by the Massachusetts Defenders Committee for . . . [the petitioner].

"On August 8, 1961, the petitioner was entitled to a good conduct discharge under the provisions of . . . c. 127, §§ 129, 129A and 129B, the said date being the maximum release date of the sentences imposed on October 5, 1959. On August 8, 1961, the Department of Correction delivered to the petitioner a Certificate of Discharge at the East Cambridge Jail.

"On September 8, 1961, the petitioner was brought before the Middlesex Superior Court on a Writ of Habeas Corpus and his case was continued till September 15, 1961. The petitioner was represented by counsel [on September 8 and September 15, 1961].

"On September 15, 1961, the petitioner was found to be a sexually dangerous person and was ordered committed to the Treatment Center . . . for an indeterminate period of a minimum of one day and a maximum of life . . . in accordance with the provisions of . . . c. 123A, as amended. . . ."

The single justice reserved and reported the case, without decision, for the determination of the full court.

1. The principal question is whether all the procedures for commitment to the treatment center required by c. 123A,

---

[1] The judge found that with respect to the matters occurring on July 7, August 3, and August 4 the petitioner was not represented by counsel.

§ 6, must be completed while the petitioner remains a prisoner under sentence. The petitioner ceased to be a prisoner on August 8, 1961, and the commitment proceedings were not completed until September 15, 1961, when he was found to be a sexually dangerous person and was committed to the center. While the petitioner was still a prisoner the following steps under § 6 were taken: He was designated as potentially dangerous and was committed to the center for examination and diagnosis; a report was presented by the examining psychiatrists that he was dangerous; and a petition was filed and allowed to give him a speedy hearing to determine whether he should be committed for treatment and rehabilitation.

The petitioner argues that he can be committed to the center only while still a prisoner. We are of opinion that, inasmuch as the proceedings required by § 6 were properly commenced while the petitioner was a prisoner, the fact that he was not a prisoner when he was finally found to be sexually dangerous does not invalidate the commitment.

The portions of § 6, here relevant are as follows: "If such report [by the examining psychiatrists] clearly indicates that such prisoner is a sexually dangerous person, the clerk shall thereupon notify the court and the district attorney, and the district attorney shall file a petition for commitment . . . and he shall give notice to the prisoner or to his parents . . . or next friend, if it appears . . . that . . . [the] prisoner is incapable of conducting his contest to the report. The court may require such further notice as it deems necessary to protect . . . [his] interest . . . [and] may continue the hearing pending such notice . . . . The hearing shall be conducted in the manner described in section five" (fourth paragraph).

Paragraph five provides: "Pending the completion of such hearing, the court may order that the prisoner be retained in the custody of the superintendent of the institution in which the center, or branch thereof, is located or may commit him to the custody of a sheriff or keeper of a jail or place of detention, until such time as the matter is heard on the merits."

Paragraph six provides in part: "If the court finds that such prisoner is a sexually dangerous person, it shall commit him to the center . . . for an indeterminate period of a minimum of one day and a maximum of such person's natural life, for the purpose of treatment and rehabilitation . . . ."

We are of opinion that the fifth paragraph provides for maintaining custody of the person throughout the hearing and shows that § 6 may operate, once properly commenced, without any further requirement that the person be a prisoner. The petitioner invites our attention to the phrase "such prisoner" in paragraph six and argues that its use shows a legislative intent that the petitioner must be a prisoner at the time of the finding. We do not agree. The phrase, we think, is no more than a reference to the person being committed who at the outset must be a prisoner under sentence and is not intended to limit the applicability of paragraph six.

To require that all steps under § 6, even if properly commenced as here, be completed before a person's prison sentence ended would tend to encourage hasty examinations and diagnoses. This would not be conducive to a careful analysis of the petitioner's condition. In construing the statute we are also mindful of its purposes which are to ascertain who are sexually dangerous persons for the protection of society, and to cure and rehabilitate them as soon as possible. This statute has been construed not to be penal. *Commonwealth* v. *Dagle,* 345 Mass. 539, 541. *Commonwealth* v. *Ackers,* 343 Mass. 63, 68. Thus, in view of the purposes of the statute, we decline to interpret it as requiring that the proceedings under § 6 once properly commenced must terminate because the person ceases to be a prisoner. See *Le Donne,, petitioner,* 173 Mass. 550.

2. Because he was not represented by counsel on three occasions (July 7, August 3, and August 4), the petitioner contends that there was a denial of due process which invalidated the subsequent commitment on September 15.[2] As stated above, the statute is not penal but merely pro-

---

[2] It does not appear that the petitioner was indigent or that he requested counsel.

vides a method for identifying, isolating, and curing sexually dangerous persons.   Thus the constitutional rights to counsel held to be essential in criminal cases (see *Gideon* v. *Wainwright,* 372 U. S. 335) are not necessarily applicable to proceedings of this sort.   See generally, annotation in 24 A. L. R. 2d 350.   It does not appear that the petitioner was ever denied counsel, and it is to be noted that at all times after August 7 he was represented by counsel.   Thus at the time of the court hearing (September 15) to determine whether he was a sexually dangerous person he had the benefit of legal assistance.   This was the time above all in the commitment process when the assistance of counsel was of importance.

*Petition dismissed.*