CHARLES E. LAMB, petitioner.

Suffolk.   March 7, 1975. — August 13, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Constitutional Law,* Due process of law, Sex offender.

In a habeas corpus proceeding seeking release from a treatment center for sexually dangerous persons of one committed for sixty days' examination and diagnosis pursuant to an order under G. L. c. 123A, § 6, the defendant was not entitled to litigate alleged errors leading up to and including a previous order adjudicating him a sexually dangerous person and committing him to the center for an indeterminate period where it appeared that such errors either were or could have been argued in the Appeals Court on its review of the commitment proceedings and that the net effect of its decision and the decision of the Supreme Judicial Court upon further appellate review was to nullify the indeterminate commitment order. [496]

Notwithstanding a delay of about two years and three months between the expiration of the sentence of a defendant, who was

ordered "discharged from further imprisonment" but who was retained in custody pending conclusion of proceedings previously commenced under G. L. c. 123, § 6, for his commitment to a treatment center for sexually dangerous persons, and an order of the Superior Court committing the defendant to the center for sixty days' examination and diagnosis, such commitment order was valid where it appeared that the delay was caused in large part by time spent on procedural steps taken by or on behalf of the defendant. [496-500]

A defendant lawfully committed under G. L. c. 123A, § 6, to a treatment center for sexually dangerous persons for sixty days' examination and diagnosis, as extended to the date of this court's decision in a habeas corpus proceeding by him, is entitled to a prompt hearing, in accordance with the rules announced in the *Andrews* case, *ante*, 468 (1975), to determine whether he is a sexually dangerous person. [500-501]

PETITION for a writ of habeas corpus filed in the Supreme Judicial Court for the county of Suffolk on June 24, 1974.

The case was reserved and reported by *Kaplan*, J.

*Francis John Stolarz* for the petitioner.

*Dennis J. LaCroix*, Assistant Attorney General, for the respondents.

QUIRICO, J. This is a petition for a writ of habeas corpus originally filed with the clerk of this court for Suffolk County and reserved and reported to the full court by a single justice, without decision, on the petition, answer, a stipulation of material facts, and a "Suggestion of Legal Issues Presented." The petitioner seeks his release from the treatment center at Massachusetts Correctional Institution at Bridgewater (Bridgewater), to which he has been committed by order of a Superior Court judge, acting under G. L. c. 123A, § 6, for examination and diagnosis as a possibly sexually dangerous person (SDP). G. L. c. 123A, § 1. A review of prior proceedings in this and related cases will help to clarify matters and to explain why we believe that not all of the several issues the petitioner seeks to raise can now be litigated by him in this proceeding.

On May 8, 1968, the petitioner pleaded guilty in the Superior Court to indictments charging him with assault and battery by means of a dangerous weapon and mayhem. He was sentenced on each conviction to a term of imprisonment of not less than five nor more than seven years at Massachusetts Correctional Institution at Walpole (Walpole), the sentences to be served concurrently. On May 5, 1969, the superintendent of Walpole requested the Department of Mental Health to have a psychiatrist examine the petitioner at Walpole, pursuant to G. L. c. 123A, § 6. On May 8, 1969, however, before the examination at Walpole could take place, the petitioner was transferred for his own protection to the segregation unit at Bridgewater. This transfer was apparently necessary because the petitioner "had a fear that other inmates were going to beat him because of the nature of his crime."[1]

In July, 1969, while he was in the segregation unit at Bridgewater, the petitioner was examined by a psychiatrist at the request of the Bridgewater superintendent, pursuant to G. L. c. 123A, § 6. The examining psychiatrist concluded that further examination was warranted and that the petitioner should be committed to the treatment center established at Bridgewater for the care, custody, treatment and rehabilitation of SDPs. G. L. c. 123A, §§ 2, 6. On August 11, 1970, the superintendent filed a motion with the clerk of the Superior Court to commit the petitioner to the treatment center for examination and diagnosis for a period not exceeding sixty days. On September 17, 1970, the petitioner was brought into the Superior Court and counsel was appointed to

---

[1] The record indicates that the petitioner's convictions resulted from his horrible abuse of the four-year old daughter of a woman friend. Medical examinations revealing that this child and her five-year old sister had been beaten about the head and body, including the sexual organs, and burned on the abdomen by cigarettes apparently began the investigatory chain leading to the arrest and conviction of the petitioner.

represent him.    On October 6, 1970, after hearing, a
judge of that court ordered the petitioner committed for
the sixty-day observation period.    Following this observa-
tion period, two psychiatrists concluded that the peti-
tioner was an SDP.    The district attorney thereupon filed
a petition to commit the present petitioner to the treat-
ment center as an SDP.    Before this petition was granted,
as it ultimately was, an additional sixty-day examination
was made, which produced the same conclusions, and,
on the petitioner's motion, a further examination was
conducted by an independent psychiatrist.    In a May,
1971, letter filed with the court, this psychiatrist, too,
concluded that the petitioner was an SDP.    No further
action apparently occurred until the petitioner moved on
February 17, 1972, to dismiss the Commonwealth's
motion to commit him to the treatment center.    Two
days later, the petitioner's sentence, with deductions for
"good behavior," expired, and he was ordered "dis-
charged from further imprisonment," but was apparently
retained in custody pending conclusion of the SDP
proceeding.    See *LaMorre* v. *Superintendent of Bridge-
water State Hosp.* 347 Mass. 534, 536, 538 (1964);
*Commonwealth* v. *Fitzgerald,* 350 Mass. 98, 100 (1966).
Following a hearing on March 9, 1972, a judge denied
the petitioner's motion to dismiss, overruled a number of
objections made by the petitioner, adjudicated him an
SDP, and committed him to the treatment center for an
indeterminate period of from one day to life.

The petitioner thereupon sought and obtained appel-
late review of exceptions alleged by him in the course of
the proceedings summarized above.    In *Commonwealth*
v. *Lamb,* 1 Mass. App. Ct. 530 (1973), the Appeals
Court (1) overruled a number of exceptions raising
various constitutional questions as to the circumstances
and manner in which the c. 123A proceedings had been
commenced, and (2) sustained exceptions relating to
(a) the admission of certain hearsay evidence (see *Com-
monwealth* v. *Bladsa,* 362 Mass. 539 [1972]), (b) the

admission of certain privileged communications between the petitioner and a psychotherapist (see G. L. c. 233, § 20B) who did not warn the petitioner of the possible adverse consequences of his disclosures, and (c) the issuance of the order of indeterminate commitment (this exception being sustained on the basis of [a] and [b], above). The Appeals Court concluded its opinion by remanding the matter "to the Superior Court for further proceedings not inconsistent with this opinion." 1 Mass. App. Ct. at 535.

After the Appeals Court rendered its decision, the Commonwealth sought further appellate review by this court under G. L. c. 211A, § 11. We granted that application, limited to the issue of the psychotherapist-patient privilege, and held that G. L. c. 233, § 20B, preserved "a patient's rights to keep privileged any communications made to a court-appointed psycho-therapist in the case of a court-ordered examination, absent a showing that he was informed that the com-munication would not be privileged and thus, inferential-ly, that it would be used at the commitment hearing." *Commonwealth* v. *Lamb,* 365 Mass. 265, 270 (1974). We concluded by saying: "The exception relating to the psychotherapist-patient privilege is sustained, and the case is remanded to the Superior Court." *Id.* at 270-271.

Our opinion was issued May 6, 1974. On May 15, 1974, the petitioner filed a motion in the Superior Court to vacate the order of commitment. On May 22, 1974, at a hearing on the petitioner's motion, the district attorney filed a motion to recommit the petitioner to the treatment center. On May 23, 1974, a judge denied the petitioner's motion, granted the district attorney's motion, and ordered the petitioner committed to the treatment center for sixty days for examination and diagnosis. The present petition for a writ of habeas corpus was filed with the clerk of this court for Suffolk County on June 24, 1974. The record indicates that as of October 17, 1974, when the stipulation of facts was filed, the petitioner was

still being held at the treatment center "pursuant to the order of the Court," presumably meaning the May 23, 1974, order for sixty days' commitment referred to above.

1. A number of the allegations contained in the petition and a considerable portion of the petitioner's brief focus on the legality of the proceedings leading up to and including the March 9, 1972, order committing him to the treatment center for an indeterminate period as an SDP. We hold, for two reasons, that any alleged errors leading up to and including that order cannot now be litigated in this habeas corpus proceeding. First, such alleged errors either were or could have been argued in the Appeals Court when that court reviewed those proceedings in 1973, and these matters may not now be reopened. See A. B. A. Standards, Post-Conviction Remedies, § 6.1 (Approved Draft 1968); Uniform Post-Conviction Procedure Act (1966 Rev.) § 8, 11 U. L. A. 477, 528 (Master ed. 1974). Second, in any event, the net effect of the combined decisions of the Appeals Court and of this court was to uphold exceptions to the 1972 order of commitment, thus nullifying that order. That is to say, the petitioner is now being held at the treatment center pursuant to the May, 1974, order for (as originally entered) a sixty-day period of examination and diagnosis. Having already won his point that the 1972 indeterminate commitment order was invalid, he is not entitled to have us indulge him in his attempt to establish further grounds of invalidity relating solely to that previous commitment. Thus, we put aside contentions relating solely to the petitioner's *past* commitments to the treatment center and turn to the remaining contentions, which relate to his *present* commitment to the treatment center.

2. The petitioner argues, in essence, that his present commitment to the treatment center cannot be justified because the order therefor was not entered while he was serving a prison sentence. This contention is merely a variation on a theme previously rejected by this court.

*LaMorre* v. *Superintendent of Bridgewater State Hosp.*
347 Mass. 534, 536-538 (1964). *Commonwealth* v.
*Fitzgerald,* 350 Mass. 98, 99-100 (1966).

In the first of the two cases, just cited, LaMorre, then
serving a sentence at Walpole, was ordered committed to
the treatment center under G. L. c. 123A, § 6, for sixty
days' observation and diagnosis. After the filing of the
psychiatrist's report, in which it was concluded that
LaMorre was an SDP, but before an order of indeter-
minate commitment was entered, LaMorre's sentence
expired and he received a certificate of discharge from
that sentence. LaMorre than apparently filed a petition
for a writ of habeas corpus in the Superior Court;
proceedings on the petition were continued and the writ
of habeas corpus presumably was denied, because a week
later LaMorre was found to be an SDP and was commit-
ted to the treatment center for an indeterminate period.
At pp. 536-537 we said: "The principal question is
whether all the procedures for commitment to the treat-
ment center required by c. 123A, § 6, must be completed
while the petitioner remains a prisoner under sentence.
. . . The petitioner argues that he can be committed to
the center only while still a prisoner. We are of opinion
that, inasmuch as the proceedings required by § 6 were
properly commenced while the petitioner was a prisoner,
the fact that he was not a prisoner when he was finally
found to be sexually dangerous does not invalidate the
commitment." We based this conclusion in part on
statutory construction and in part on the following policy
considerations: "To require that all steps under § 6, even
if properly commenced as here, be completed before a
person's prison sentence ended would tend to encourage
hasty examinations and diagnoses. This would not be
conducive to a careful analysis of the petitioner's con-
dition. In construing the statute we are also mindful of
its purposes which are to ascertain who are sexually
dangerous persons for the protection of society, and to

cure and rehabilitate them as soon as possible." *Id.* at 538.

In the *Fitzgerald* case, we followed the *LaMorre* holding where the Fitzgerald's sentence expired before the end of a sixty-day observation and diagnosis commitment period and before a petition for indeterminate commitment was filed. We concluded: "There is no express provision for continuing custody from the expiration of the sixty day observation period until the filing of the petition but we think the statutory intention is clear that, if proceedings have been begun while the defendant is a prisoner, custody may be retained and the proceedings carried to completion in due course." 350 Mass. at 100 (1966).

We think that the rule of the *LaMorre* and *Fitzgerald* cases applies in the present circumstances notwithstanding the long delay between the expiration of the petitioner's original sentence and the entry of the order of commitment by which he is presently being held for observation and diagnosis. The delay involved here was caused, in large part at least, by time spent on procedural steps taken by or on behalf of the petitioner. The original request of the Walpole superintendent that the petitioner be examined as a possibly SDP was made in May of 1969, although this request could not immediately be complied with because of the necessity of transferring the petitioner to the Bridgewater segregation unit for his own protection. The petitioner was actually committed for two sixty-day observation periods and allowed, on his own motion, to undergo examination by an independent psychiatrist before his sentence expired in 1972, less than three weeks before he was adjudicated an SDP and committed to Bridgewater for an indeterminate term. The subsequent appellate proceedings, instituted by the petitioner, were merely extensions of the commitment proceedings. What we said in the *Fitzgerald* case is applicable here: "[I]f proceedings have been begun while the defendant is a prisoner, custody may be re-

tained and the proceedings carried to completion in due course."

The clear import of the decisions of the Appeals Court and of this court, in sustaining certain exceptions in the prior commitment proceedings and remanding the case to the Superior Court, was that the 1972 order of indeterminate commitment was invalid solely because of evidentiary errors in the hearing on the district attorney's petition which produced that order. Under the *LaMorre* and *Fitzgerald* cases, the petitioner could still be retained in custody and a decision made after a proper hearing as to whether he should be released or again committed to the treatment center for an indeterminate period. It was entirely proper for the Superior Court judge to decline to make this decision on the basis of possibly outdated diagnostic information and, instead, to commit the petitioner to the treatment center for a new sixty-day period of observation. We assume that the apparent lack of a subsequent commitment hearing is due to a stay of proceedings pending our decision in this case. In any event, our holding this day in *Andrews, petitioner, ante,* 468 (1975), will entitle the petitioner to a prompt, and recurrent, if necessary, review of his status with the burden on the Commonwealth to justify the petitioner's continued detention by proof beyond a reasonable doubt that the petitioner is an SDP.

We wish to emphasize that our holding on this issue is in no way intended to authorize or approve the continued detention, after the expiration of their sentences, of any persons who are undergoing observation and diagnosis, but who have not been indeterminately committed, as sexually dangerous persons, where (a) the filing or prosecution of the original motion to commit the prisoner for observation was deliberately or unreasonably delayed by the Commonwealth until such time when it was virtually impossible that such proceedings could be completed before the expiration of the prisoner's sentence, or (b) the filing or prosecution of the motion that the

prisoner be found an SDP and committed to the treatment center for an indeterminate period was deliberately or unreasonably delayed by the Commonwealth after the conclusion of any observation period. In general, all § 6 proceedings should be commenced and completed with reasonable dispatch. We regard cases concerning an accused's constitutional right to a speedy trial as not wholly inapposite. See, for example, *Klopfer* v. *North Carolina*, 386 U. S. 213, 222-223 (1967); *United States* v. *Marion*, 404 U. S. 307, 320 (1971); *Barker* v. *Wingo*, 407 U. S. 514, 530 (1972); *Strunk* v. *United States*, 412 U. S. 434, 440 (1973); *Commonwealth* v. *Gove*, 366 Mass. 351, 356-365 (1974), and additional cases there cited.

3. We turn finally to the question posed in the parties' "Suggestion of Legal Issues Presented" as follows: "Do the provisions of G. L. c. 123A, as applied to the petitioner and when compared with the provisions of G. L. c. 123, violate his right to the equal protection of the law as guaranteed him by the Fourteenth Amendment to the Constitution of the United States and in light of *Commonwealth* v. *Druken*, 356 Mass. 503 (1969)?" For the reasons expressed this day in *Andrews, petitioner, supra*, we answer "yes" to this question. However, for reasons also discussed in the *Andrews* case, we conclude that the unconstitutional disparity between proceedings under c. 123A and c. 123 relates not to the circumstances of an original or subsequent temporary commitment for observation and diagnosis, but rather to the indeterminate duration of the final commitment and the burden imposed on the SDP to obtain his release therefrom. We conclude, therefore, that the petitioner's temporary commitment under the May 23, 1974, order of the Superior Court, and any extension thereof to this date, is lawful. In accordance with the rule announced in the *Andrews* case, however, the petitioner is entitled to a prompt hearing to determine whether he is an SDP. At such hearing, the Commonwealth will have the burden of

368 Mass. 501                                                501

Police Commr. of Boston *v.* Municipal Court of the W. Roxbury Dist.

establishing beyond a reasonable doubt that he is an SDP. If the Commonwealth sustains that burden, he may be committed to the treatment center until such time as he is entitled to a discharge under G. L. c. 123A, § 9, and the *Andrews* decision.

The petition for a writ of habeas corpus is denied.

*So ordered.*