NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-921

COMMONWEALTH

<u>vs</u>.

WALTER MAINS.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

The defendant appeals from a Superior Court order denying his motion to withdraw his guilty pleas due to ineffective assistance of counsel premised upon conflict of interest, specifically, his plea counsel's bias against African-Americans, a racial class of which the defendant is a member. After review, we conclude that the defendant established an actual conflict of interest. As a result, we reverse.

<u>Background</u>. After indictments issued charging the defendant with an October 2009 armed robbery and assault and battery of a woman in Boston, and a November 2009 assault with intent to rob and assault and battery of another woman in Boston, the defendant was arraigned and appointed counsel on

April 2, 2010.[1]  The defendant remained in custody on bail.  On March 22, 2011, successor counsel (plea counsel) was appointed to represent the defendant.[2]  After some motion practice, on June 30, 2011, the defendant "offer[ed] to plead guilty to all offenses as charged."  He pleaded guilty that day and received an aggregate sentence of two years, with eighteen months to serve in the house of correction and the balance suspended for two years, during which time the defendant was to be on probation.  The defendant was deemed to have served the committed portion of his sentence at that time.[3]

---

[1] On the date of arraignment, the defendant was appointed counsel on a "stand-by" basis only, with the appointment of ongoing counsel taking place a few days later on April 6, 2010.

[2] In May 2010, the month following the initial appointment of counsel, the defendant moved to discharge counsel, but the motion was denied.  Over the next few months, appointed counsel proceeded to engage in discovery and motion practice on behalf of the defendant.  In September 2010, the defendant was committed to a state hospital for observation due to mental health concerns.  See G. L. c. 123, § 18 (a).  In December 2010, the defendant's attorney requested a competency evaluation.  On January 28, 2011, the defendant was deemed competent to stand trial, following which the case was set down for a change of plea hearing.  On February 3, 2011, the defendant again moved to discharge counsel.  After the defendant was again examined for competency and determined to be competent, the court heard the defendant's motion to discharge counsel and allowed it.  Plea counsel was appointed the following month.

[3] Within two months of sentencing, the defendant was alleged to be in violation of probation.  Extensive proceedings followed, including further examinations concerning the defendant's competency.  The defendant was later civilly committed.  See Commonwealth vs. Mains, Suffolk Sup. Ct., No. 1184CR11096 (Jul. 29, 2021).  See also Commonwealth vs. Mains,

2

Twelve years later, in June 2023, the Supreme Judicial Court issued Commonwealth v. Dew, 492 Mass. 254 (2023), in which it held that the same attorney who had represented the defendant at his plea hearing harbored "animus against persons of the Muslim faith" and "racism against Black persons," such that his representation of the defendant in the Dew case -- a Black, Muslim man -- "presented an actual conflict of interest."  Id. at 266.  The Court's conclusion was grounded in a series of social media postings and text messages made and sent by plea counsel expressing "vitriolic hatred of and bigotry against persons of the Muslim faith . . . matched only by his equal scorn for and racism against Black persons."  Id. at 254-255. The postings were made during the time that plea counsel represented the Dew defendant, who was a Black person and followed the Muslim faith.  Further, plea counsel "ordered [Dew] to stop wearing his religious garb and refused to meet with [him], choosing instead to forgo the opportunity to discuss the merits of the criminal case, upon seeing that the defendant was wearing his kufi."  Dew, 492 Mass. at 268.  The Court accordingly vacated the conviction, allowed the defendant to

---

Mass. App. Ct., No. 23-P-514 (pending decision, entered May 8, 2023).

3

withdraw his guilty plea, and remanded the case for a new trial. Id. at 268.

The following month, the defendant filed a motion for new trial, arguing that his case presented the "exact issue" discussed in Dew. The motion was supported by the defendant's unsigned affidavit, stating that he "identif[ied] as African-American," he assumed that his appointed counsel "would execute his legal duties in a respectful and professional manner," and he "never imagined that the fact that [he was] African American would matter in the least to [his] court appointed counsel." The motion was also supported by the 2021 affidavit of a staff attorney at the Committee for Public Counsel Services (CPCS), who related that in September 2017 she viewed the publicly available Facebook page of the defendant's plea counsel. The affidavit went on to describe several posts going back to 2014. In his motion the defendant argued that the posts alone established an actual conflict of interest that deprived the defendant of his right to the effective assistance of counsel.

A judge of the Superior Court denied the motion without a hearing, noting that, "Defendant's affidavit is unsigned and the allegations therein, even if true, do not establish an actual conflict of interest or a potential conflict with material prejudice. The docket sheet reflects active litigation by [plea counsel] on defendant's behalf and a favorable outcome."

4

Discussion.  We review the denial of a motion for new trial for significant error of law or other abuse of discretion.  See Commonwealth v. Tate, 490 Mass. 501, 505 (2022).  However, we "make an independent determination as to the correctness of the judge's application of constitutional principles to the facts as found."  Dew, 492 Mass. at 261, quoting Commonwealth v. Caldwell, 487 Mass. 370, 374 (2021).

The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights guarantee to criminal defendants the right to the effective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 686 (1984); Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), citing Commonwealth v. Libby, 358 Mass. 617, 621-622 (1971).  The right to the effective assistance of counsel is violated when a defendant is represented by a lawyer whose actual conflict of interest threatens to sway the lawyer's decision making.[4]  See Dew, 492 Mass. at 263 n.22, quoting Commonwealth v. Perkins, 450 Mass. 834, 851-852 (2008), and Comment [4] to Mass.

---

[4] "Where no actual conflict exists, 'an attorney's personal interests or obligations may still give rise to a "potential" conflict,' . . . which requires reversal upon an additional showing of 'material prejudice.'"  Dew, 492 Mass. at 265 n.26, quoting Commonwealth v. Mosher, 455 Mass. 811, 823 (2010), and Commonwealth v. Tate, 490 Mass. at 509.  Because the defendant did not claim there was a potential conflict on appeal, we do not consider it.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

5

R. Prof. C. 1.7, 426 Mass 1330 (1998) (actual conflict of interest arises where lawyer has competing interest or responsibility that will materially interfere with lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of client). "The analysis [of] whether an actual conflict arose is case-specific." Dew, supra, citing Commonwealth v. Cousin, 478 Mass. 608, 618 (2018), S.C., 484 Mass. 1042 (2020). Once a defendant establishes an actual conflict of interest, "he is entitled to a new trial without a further showing; he need not demonstrate that the conflict adversely affected his lawyer's performance or resulted in actual prejudice." Dew, supra at 263-264, quoting Commonwealth v. Mosher, 455 Mass. 811, 819 (2010).

On appeal, the defendant contends that the judge erred in ruling that he had failed to establish an actual conflict of interest since he relied on the same Facebook posts that the Supreme Judicial Court did in determining that plea counsel had a disabling conflict of interest in Dew. However, this case presents the question explicitly left open in Dew, whether plea counsel's Facebook posts alone rendered him categorically unable to represent any defendant belonging to one of the groups referenced in his posts. Compare Dew, 492 Mass. at 266 n.27, with id. at 268-270 (Cypher, J., concurring). The defendant

6

asks us to answer that question without regard for when the posts were made in relation to the representation and irrespective of plea counsel's other conduct during the representation.[5]  We answer only the narrow question whether the posts at issue establish an actual conflict for this defendant; on that basis, we conclude that they do.

We acknowledge that, unlike the circumstances in Dew, the Facebook posts were not made and shared during the time plea counsel represented the defendant, see Dew, 492 Mass. at 257, and that, unlike the situation in Dew, plea counsel did not make explicitly racist or bigoted statements to the defendant during his representation.  Compare id. at 255-256 (plea counsel "chastised the defendant" at least twice "for wearing religious garb" and would not speak with the defendant solely on account of the defendant's choice to freely exercise his religious beliefs).  Cf. Goldman v. Weinberger, 475 U.S. 503, 507 (1986) (for members of the civilian population, wearing religious garb is protected by the free exercise clause).  In this case, however, we do not consider either the three-year gap between plea counsel's representation of the defendant and the posts or

_____

[5] At argument, counsel for the defendant claimed that he was asking for an "extension" of the rule of decision from Dew, which would work to supply relief to, with certain exclusions, all of plea counsel's former clients.

the fact that plea counsel did not add private abuse of the defendant here to the public airing of his racist views to bar the defendant's claim of actual prejudice.[6]  Plea counsel created a "pattern of [social media] posts," Dew, 492 Mass. at 266, that reflected an intense racism and bigotry that we cannot conclude developed overnight and which we do not conclude sprang into existence in the relatively short time between 2011 and 2014. Similarly, although we acknowledge that the defendant did not suffer the explicitly bigoted treatment that plea counsel visited on his client in Dew, where the Supreme Judicial Court has already concluded that plea counsel's social media postings, taken alone, exhibit extreme bias, we do not read Dew to require

---

[6] We do not rule out the possibility that, in a different case, a break in time between an attorney's expression of racist or bigoted views and his representation of a client to whom those views would apply could impact the actual conflict analysis.  It is, of course, a fundamental premise of our criminal justice system that individuals are capable of reform and rehabilitation.  See, e.g., Matter of Allen, 400 Mass. 417, 425 (1987), quoting March v. Committee of Bar Examiners, 67 Cal. 2d 718, 732 (1967) ("A fundamental precept of our system [particularly our correctional system] is that [people] can be rehabilitated").  See also Commonwealth v. Sharma, 488 Mass. 85, 88 (2021), citing Henschel v. Commissioner of Correction, 368 Mass. 130, 136 (1975) (stating "the fact that the statutory purpose of parole is to determine whether a prisoner is rehabilitated"); LaMorre v. Superintendent of Bridgewater State Hosp., 347 Mass. 534, 538 (1964) (sexually dangerous persons statute's purpose is "to cure and rehabilitate [offenders] as soon as possible").  A corollary of the ability to reform and atone for one's conduct, and of human agency itself, is an individual's ability to deteriorate or degenerate.

overt acts to "confirm" the existence of an actual conflict. Id.

Because we conclude that, on these facts, the defendant showed bias on the part of plea counsel that necessarily infected his representation of the defendant, we part ways with the motion judge and hold that the defendant did establish an actual conflict of interest.[7]

Order entered July 27, 2023, denying motion for new trial and to withdraw guilty pleas, reversed.

By the Court (Singh, Hand & D'Angelo, JJ.[8]),

Clerk

Entered:  December 18, 2024.

---

[7] The defendant initially framed his argument as an equal protection challenge, contending that the very appointment of plea counsel to represent him constituted a violation of his State constitutional right to "equality under the law" and Federal constitutional right to "equal protection of the laws" because, as a result of the appointment of a lawyer racially biased against him, he bore a greater burden than white defendants.  He does not argue, however, that the appointment itself was motivated by racial bias.  As a result, his equal protection claim fails.  See Commonwealth v. Shephard, 493 Mass. 512, 525 (2024) (neutral decision with disparate impact unconstitutional only if impact can be traced to discriminatory purpose).

[8] The panelists are listed in order of seniority.