**TRUCK DRIVERS LOCAL UNION NO. 807, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Petitioner,**

and

**Pension Fund of New York City Trucking Industry Local 807, Intervenor,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 57, 437, Dockets 74–1001, 74–1211.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1974.

Decided Nov. 6, 1974.

J. Warren Mangan, Long Island City, N. Y., for petitioner.

Arthur Liberstein, New York City (Zelby, Burstein, Liberstein & Hartman, New York City), for intervenor.

Elinor H. Stillman, Atty., N. L. R. B. (Michael S. Winder, Alan D. Longman, Attys.; Peter G. Nash, Gen. Counsel; John S. Irving, Deputy Gen. Counsel; Patrick Hardin, Asst. Gen. Counsel; Elliott Moore, Deputy Associate Gen. Counsel, on the brief), for N. L. R. B.

Before DANAHER *, FEINBERG and MULLIGAN, Circuit Judges.

DANAHER, Senior Circuit Judge:

Certain individual pension claimants charged that they unlawfully had been denied pension credits for service with a trucking company employer in that Local No. 807 had restrained and coerced employees in the exercise of their Section 7 rights. In due course the Regional Director notified the claimants that investigation had failed to establish their charges. Accordingly the Regional Director refused to issue a complaint. The several claimants appealed the Regional Director's ruling to the General Counsel and each appeal was denied.

The Regional Director nevertheless issued a complaint alleging that Local No. 807 was in violation of Sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act by being a party to and by maintaining a Pension Fund,[1] the Rules and Regulations for the administration [2] of which provided pension credits as a preference to employees who were members of the Teamsters prior to January 1, 1937, as against employees who had not been members of the Union prior to that date.

After hearings, an Administrative Law Judge concluded that the record disclosed a *per se*[3] violation of the Act. He also recommended that the Board issue a cease and desist order with a posting of the usual notices. But he also concluded, specifically, that Local 807 had "not engaged in any violation of the Act in the actual administration of the Fund".

The Board adopted the findings and the conclusions of the Administrative

---

* Senior Circuit Judge for the District of Columbia Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. The Union and various trucking employers and employer associations had established the Fund in 1950.

2. The Fund is administered by a Board of eight Trustees, four being designated by the employers and four by the union. Each group of Trustees votes as a unit, with a majority of each unit being required for definitive action.

3. Although not necessarily apropos in the present situation, we find ourselves reminded of Judge Medina's observation in N.L.R.B. v. Miranda Fuel Co., Inc., 326 F.2d 172, 175 (2 CA 1963):

> On the subject of fair and impartial representation the Board insists upon the *per se* approach. Like all cliches and short cuts in the law, designed to make life easy for the judicial officer who has to make the decisions, this merely eliminates the thinking process necessary to get at the root of the matter.

Law Judge and issued its own cease and desist order. The Union was directed to refrain from participating in the pension program by allowing pension service credits arising out of union membership or any other discriminatory basis in violation of the Act so as to favor union members over nonunion employees employed under the same collective agreement or in the same collective-bargaining unit.[4]

Our issue stems from certain language incorporated by the Trustees into Rules and Regulations of February 28, 1972, reading in pertinent part:

Section 2. Past Service

(a) It is recognized that it would be difficult for many, if not most, of the employees to establish their periods of Covered Employment prior to January 1, 1937. Consequently, anyone who was a member of Local 807 *prior* to the period commencing January 1, 1937 *may, at the sole discretion of the Trustees,* be given a year of Pension Credit for each year he was a member of Local 807 during this period. . . . Pension Credit *shall* also *be granted* for any period of time that an employee can prove that he worked in covered employment through employer records. (Emphasis added.)

It may readily be noticed that the Trustees were looking back some 35 years or more as they undertook evaluation of claims of pension credits. Each year of pension credit beyond 30 years was worth a substantial increment in benefits. Such an award obtained whether an applicant prior to January 1937 had been a member of a union or not, but evidence to establish eligibility quite properly was required. An applicant for pension benefits was required to fill out a form which included authorization to obtain Social Security information, but such data had not been available prior to January 1, 1937. Each applicant was bound to submit details which included his trucking-industry employment, his union initiation date and period of membership, if any, the name and address of his current employer and, in general, evidence pertinent to establish the applicant's status prior to January 1, 1937. All evidentiary details were compiled and analyzed by the Fund's administrative staff, and the applicant's file thereafter was transmitted to the Fund's Trustees for final determination.

As Section 2(a) *supra* noted, the Trustees recognized the difficulty confronting many if not most of such employees as they sought to establish their periods of covered employment prior to January 1, 1937.

Some employers had records reflecting the trucking-industry employment of a particular applicant prior to 1937. If so, Section 2(a) provided that Pension Credit "shall" be granted by the Trustees. Some employers, however, retained no such records that far back, indeed some earlier employers had gone out of business. Whether a pension claimant was or had been a nonunion employee or not, the Trustees were bound to evaluate the evidence, whatever it was and from whatever source derived. The administrative problem was alleviated in some measure, at least, if an applicant proffered evidence of pre-1937 union membership which the Trustees "at their sole discretion" were authorized to consider. If Section 2(a) had never been adopted, proof of pre-1937 union membership was some evidence of entitlement. Certainly such evidence created no "presumption"[5] of covered employment.

The Administrative Law Judge analyzed the evidence with respect to pre-1937 applications, some 32 in number. He noted that

each case appears to have been resolved on its own merits. It turns out that the use of the initiation date ben-

---

4. The Board seeks enforcement of that order; the Union and the Pension Fund ask that it be set aside.

5. The Administrative Law Judge in his adoption of that term had looked to the Board's

Decision and Order in the Nu-Car Carriers Case reported at 187 NLRB No. 117 (1971). There the Board had invalidated as discriminatory in favor of Union members, regula-

efits the union members. But it is not shown that such benefit is improper nor its use in making the pension credit grant improper.

■ There is no requirement that an applicant for a pension must be or have been a member of Local 807. Each claimant must establish his right to the satisfaction of the Trustees. We see no illegal discrimination in favor of employees who are represented by the Union for union and nonunion claimants participate in the Pension Fund on an equal basis.[6]

Faced with the fact that there was no evidence to establish an instance of discrimination, the Board here has argued on brief that the challenged language makes it

> reasonable to infer that current employees could conclude from the preference accorded pre-1937 union members in obtaining pension benefits *now* that it would be advantageous to become and remain union members in good standing with the expectation that their membership status may be similarly rewarded in the future. (Emphasis in the original.)

We reject the suggestion that it is "reasonable" to deduce that any "current employees", union or nonunion, can assume a later amendment to Section 2(a) or anticipate its counterpart. For one thing, since 1937, Social Security records will have been compiled. The history of the administration of the Pension Fund belies a supposition that a discriminatory violation of the Act will be created. For another thing, it strains credulity that a trucking industry employee might be encouraged to join Local 807 in the expectation that some time, under circumstances not even apparent, much less real, some amendment of the Rules might provide evidence to establish his pension credit. The possibility of any employee even thinking of such an idea or acting upon it seems utterly remote and speculative. Surely we can not predicate a finding that a party is in violation of the law upon such a gossamer-like theory. The Board's argument, *supra*, simply is not persuasive.

■ On this record we perceive no *per se* violation[7] of the Act, either from the language of Section 2(a) or otherwise.

Enforcement denied.

tions of the Fund which allowed Union members to prove entitlement to pension credits on the basis of "rebuttable presumption" that they were covered prior to 1952. That case upon review sub nom., Rosen v. N.L.R.B., 455 F.2d 615 (CA 3 1972), turned on evidence that the claimant, one Pagel, simply had not been employed prior to 1952 in a unit covered by a collective bargaining agreement. The *Rosen* court noted that just as here, there was no evidence that Union members not otherwise qualified received pre-1952 pension credits, nor was there evidence that Union employees situated similarly to Mr. Pagel received such pensions. *Id.* 455 F.2d 618.

6. *Cf.* Rosen v. N.L.R.B., *supra*, n. 5, 455 F. 2d at 618.

7. We realize that the construction put upon a statute by the agency charged with its administration is ordinarily entitled to deference if that construction has a reasonable basis in law, Volkswagenwerk v. FMC, 390 U.S. 261, 272, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968). But, by the same token, courts are not obliged to stand aside and rubberstamp the affirmance of an administrative decision under the circumstances there noted. *Id.*

Compare the observations of Mr. Justice Douglas in Teamsters Local v. Labor Board, 365 U.S. 667, 676, 81 S.Ct. 835, 840, 6 L. Ed.2d 11 (1961). "We cannot assume that a union conducts its operations in violation of law or that the parties to this contract did not intend to adhere to its express language. Yet we would have to make those assumptions to agree with the Board that it is *reasonable* to infer the union will act discriminatorily". (Emphasis added.) Although the Board had found a *per se* violation, 365 U.S. at 669, 81 S.Ct. 835, the Court concluded that the Board is "confined to determining whether discrimination has in fact been practiced". *Id.*, 677, 81 S.Ct. 841.

Here the Board had adopted the conclusion of the Administrative Law Judge that Local 807 "has not engaged in any violation of the Act in the actual administration of the Fund". *Cf.* Rosen v. N.L.R.B., *supra*, 455 F.2d at 618; Local 138, Internat'l U. of Operating Engineers v. N.L.R.B., 321 F.2d 130, 133–134 (CA 2 1963).