ELMER THOMPSON, petitioner.

Suffolk.    March 14, 1977. — May 5, 1977.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Evidence,* Sex offender, Of sexual misbehavior.   *Sex Offender.    Practice, Civil,* Sex offender.

Where it appeared in a hearing on a petition for a writ of habeas
   corpus that inadmissible hearsay testimony had been erroneously
   considered in a proceeding for an indeterminate commitment of
   the petitioner as a sexually dangerous person pursuant to G. L.
   c. 123A, § 6, but that when the same hearsay was introduced with-
   out objection at a subsequent hearing for the petitioner's release
   pursuant to § 9 the judge excluded the evidence from his consider-
   ation, the petitioner failed to prove that his continued confinement
   was the result of the evidence improperly admitted at the original
   hearing under § 6.   [283-285]
On a petition for a writ of habeas corpus by one who had been com-
   mitted under G. L. c. 123A, § 6, to the Bridgewater Treatment
   Center for an indeterminate time as a sexually dangerous person,
   evidence as to the treatment available to the defendant warranted
   a finding that his confinement at the center did not deny him due
   process of law nor did it constitute cruel and unusual punishment.
   [285-288]
A defendant was not denied due process or equal protection of the
   laws by the fact that the order for his commitment for an indeter-
   minate time as a sexually dangerous person under G. L. c. 123A,
   § 6, was not entered until twenty-six days following the expiration
   of his criminal sentence where the proceedings under § 6 were com-
   menced approximately a year prior to the expiration of his sentence
   and there was no deliberate or unreasonable delay by the Common-
   wealth in completing the proceedings.   [288]

PETITION for a writ of habeas corpus filed in the Su-
preme Judicial Court for the county of Suffolk on July 24,
1973.

On transfer to the Superior Court the case was heard by
*Nelson, J.*

*Kay H. Hodge* for the petitioner.

*John P. Corbett,* Assistant Attorney General, for the
respondents.

GRANT, J.   In 1964 the petitioner in this matter pleaded guilty to an indictment for indecent assault and battery on a child under the age of fourteen (G. L. c. 265, § 13B) and was sentenced to serve a term of from four to five years at the Massachusetts Correctional Institution at Walpole. In 1969, following the conclusion of proceedings brought under G. L. c. 123A, § 6, a judge of the Superior Court determined the petitioner to be a sexually dangerous person (SDP) and ordered him committed to the treatment center (G. L. c. 123A, § 2) at the Massachusetts Correctional Institution at Bridgewater for the indeterminate statutory period of from one day to life. See, generally, the cases cited in *Commonwealth* v. *Lamb*, 1 Mass. App. Ct. 530, 531 (1973), *S. C.* 365 Mass. 265 (1974), 372 Mass. 17 (1977). In 1973 a second judge of the Superior Court, in proceedings brought under G. L. c. 123A, § 9, determined that the petitioner continued to be an SDP and denied his petition that he be released from the center. No appeal was taken from either of those determinations, despite the fact that the petitioner appears to have been represented by counsel at all times now material. Several months after the second determination the petitioner filed the present petition for a writ of habeas corpus by which he again seeks to be released from the center.[1] The petition was, after hearing, ordered dismissed by a third judge of the Superior Court (trial judge). The petitioner has appealed, urging three separate grounds for reversal.

1. The petitioner contends first that he was denied his constitutional rights to confront and cross examine the witnesses against him (art. 12 of the Massachusetts Declaration of Rights and the Sixth [by reason of the Fourteenth] Amendment to the Constitution of the United States) by the admission in evidence during the original proceedings under § 6 of the testimony of two psychiatrists called by the Commonwealth concerning the contents of certain records which had been made available to them

---

[1] The petition was originally filed in the Supreme Judicial Court but was transferred to the Superior Court for disposition.

at the center and which referred to (a) the petitioner's adolescent homosexual activities with feeble-minded boys and (b) his assault on two young boys while he was on parole from a Maine prison where he had been serving a portion of his 1964 Massachusetts sentence.[2] The evidence in question was all hearsay of a type which did not fall within any of the limited exceptions to the hearsay rule which were created by G. L. c. 123A, § 5, as subsequently construed in *Commonwealth* v. *Bladsa*, 362 Mass. 539, 540-542 (1972). If the present case were now before us on direct appeal from an original order of commitment under § 6 and it appeared that the order had been influenced by evidence of the nature and source already described, we would reverse the order on the authority of the *Bladsa* case. Compare *Commonwealth* v. *Lamb*, 1 Mass. App. Ct. at 532-533. But the present case is not here on such an appeal; it is here on appeal from an order denying a petition for a writ of habeas corpus. It is now clear, as it was at the time of the entry of the order here appealed from, that the petitioner's remedy for a *Blasda*-type violation was to file a petition for his release under G. L. c. 123A, § 9, which would put the Commonwealth to the burden of proving beyond a reasonable doubt, without resort to evidence of the type complained of, that the petitioner continued to be an SDP. *Andrews, petitioner*, 368 Mass. 468, 477, 485-486, 489 (1975).[3]

It appears from the record in this case that the petitioner has already availed himself of that remedy, but without success. The record includes the transcript of the 1973 hearing under § 9 which has already been referred to

---

[2] The transcript of the § 6 proceedings, which was introduced as an exhibit in the present case, fails to disclose (or even suggest) that any of the petitioner's objections or exceptions to the evidence in question was directed to the constitutional point now sought to be argued. In this respect the present case bears a close resemblance to the many appeals in criminal cases in which every admission of hearsay suddenly assumes grave constitutional dimensions.

[3] The *Andrews* case was decided on August 13, 1975, more than two months prior to the entry of the order appealed from in the present case.

and at which another judge of the Superior Court determined that the petitioner continued to be an SDP without regard to any of the evidence now complained of which had been admitted at the 1969 hearing under § 6. During the course of the 1973 hearing two psychiatrists called by the Commonwealth testified without objection (see *Peterson, petitioner*, 354 Mass. 110, 115-116 [1968]) to the contents of the same records concerning the petitioner's adolescent homosexual activities and the assault committed by him while on parole in Maine; each psychiatrist expressed the ultimate opinion that the petitioner continued to be an SDP. At the conclusion of the testimony of each witness the judge specifically inquired of each whether he would continue to entertain the same ultimate opinion if he had been unaware of the evidence now complained of; each witness answered in the affirmative.[4] The judge made it clear that he excluded that evidence from his consideration, both in denying the petitioner's motion for a "directed finding" and in his own finding and ruling that "the petitioner ... is now, beyond reasonable doubt of this [c]ourt, a sexually dangerous person, within the meaning of [G. L. c. 123A, § 9]." See and compare *Commonwealth* v. *McHoul*, 372 Mass. 11, 13 (1977).

Accordingly, we conclude that the petitioner has failed to prove that his continued confinement at the center is the result of evidence improperly admitted during the course of the original 1969 hearing under § 6.

2. The petitioner's second contention is that his continued confinement at the center violates due process of law and constitutes cruel and unusual punishment because the treatment provided there neither benefits him nor provides any reasonable likelihood of his ultimate release. See *Commonwealth* v. *Page*, 339 Mass. 313, 317-318 (1959); *Commonwealth* v. *Hogan*, 341 Mass. 372, 376-377 (1960);

---

[4] As to the admissibility of a psychiatric opinion based in part on inadmissible hearsay which has been made available to the witness at the treatment center, see *Andrews, petitioner,* 368 Mass. at 475, and *Commonwealth* v. *Lamb,* 372 Mass. at 22.

*Nason* v. *Superintendent of Bridgewater State Hosp.* 353
Mass. 604, 611-614 (1968). On analysis, the argument con-
sists of a summary of the evidence most favorable to the
petitioner on the question whether he can ever be cured
of the traits which have resulted in the two judicial deter-
minations that he is an SDP. The peroration of the argu-
ment is that "[a] determination that [p]etitioner is un-
treatable is warranted." We think the argument (1) pro-
ceeds on the erroneous premise that the Commonwealth
is constitutionally obligated to provide the petitioner with
treatment which will result in curing his traits (see *Com-
monwealth* v. *Major*, 354 Mass. 666, 668 [1968], cert. den.
393 U. S. 1109 [1969]; *Newton, petitioner*, 357 Mass. 346,
352 [1970]) and (2) ignores the import of much of the
evidence offered at the hearing on the present petition.

At that hearing there was both oral and documentary
evidence to the effect that the petitioner has consistently
failed to respond to the conventional form of individualized
psychotherapy which has been offered to him on a weekly
basis ever since his original commitment to the center in
1969. A staff psychologist assigned to the petitioner testi-
fied that the staff had determined that the petitioner
would benefit from attendance at and participation in the
biweekly sessions of a particular group of individuals who,
like the petitioner, are of limited mental capacity and do
not respond to the conventional or orthodox modes of psy-
chotherapy, at which the emphasis would be and has been
on encouraging behavioral changes which facilitate the day
to day management of life and the conduct of personal
relationships. The petitioner, despite the continued urging
of staff members, has consistently refused to attend the
group meetings on the grounds (as stated by him) that
his attendance would result in personal inconvenience and
would be of no value or benefit to him.[5] There was evidence

---

[5] See and compare *Newton, petitioner,* where the court said (357
Mass. at 352): "Newton has refused treatment (posing no threat to
his physical well-being) designed to help him, and thus he is not now
in a position to complain about its inadequacy."

that the petitioner is amenable to a change in his life and that his being permitted to work as a trusty on the farm at Bridgewater has "manifestly changed his behavior in a positive fashion." The same psychologist specifically testified that "[a] number of variables, outside of therapy, could favorably affect... [the petitioner], and his nonattendance [at the group sessions] would not preclude his reaching a point where he could be released."

On the foregoing and other evidence the judge made the following findings and rulings: "I find as fact that the petitioner was being treated in the past and continued to be treated up until the time of this hearing consistent with the best modes of treatment available to the [c]enter. The petitioner was offered and encouraged and reasonable efforts were made to admit him to group therapy which he refused. I further find as fact that this mode of treatment was considered in the patient's best interest and his refusal to participate in the group therapy substantially limited the capacity of the [c]enter staff to provide him with more hopeful therapy .... The responsibility of the [c]enter is to provide reasonably adequate treatment, to maintain the patient so as to secure the community from the danger of such a person in its presence, and to give sufficient opportunity within the terms of ... [the] statute and the constitution to the petitioner to enable him to progress and recover and secure his timely release .... I further find that treatment has been given to petitioner and that there have been signs of progress albeit a very slow progress and one not necessarily indicative of future recovery but nonetheless such treatment has been reasonably provided. In any event, there was evidence which I find credible that the [c]enter's therapists have made and continue to make substantial efforts to induce the petitioner to subscribe to a form of treatment that would provide the most potential for his recovery."

All the foregoing findings were warranted by the evidence introduced at the hearing of the present petition. Indeed, there is no serious argument to the contrary. We think it clear that the petitioner has been "offered treat-

ment which is suitable for him to the best of the staff's collective judgment, [that the] evidence does not support the conclusion that, as to ... [the petitioner], the center's treatment is in fact inadequate ... [and that there has been] no showing ... that ... [the petitioner's] release or a different commitment is ... required." *Newton, petitioner*, 357 Mass. at 352-353. In reaching these conclusions we join the trial judge in rejecting the contention that the treatment which is offered must necessarily be declared inadequate whenever the staff is unable to convince the patient of the wisdom of accepting what is offered.

3. The petitioner's final contention is that he was deprived of due process and equal protection of law because the original order of indeterminate commitment under G. L. c. 123A, § 6, was not entered until twenty-six days following the expiration of the sentence which had been imposed on him in 1964. The judicial proceedings which ultimately led to that commitment were commenced approximately a year prior to the expiration of the petitioner's sentence, but there is nothing in the record to suggest any deliberate or unreasonable delay on the part of the Commonwealth in bringing those proceedings to fruition. The petitioner concedes, in essence, that all his arguments on this point were considered and rejected in *Lamb, petitioner*, 368 Mass. 491, 496-501 (1975). His request for reconsideration of the decision in that case is denied. Compare *Burke* v. *Toothaker*, 1 Mass. App. Ct. 234, 239 (1973); *Erhard* v. *F. W. Woolworth Co., post*, 770 (1977), further appellate review granted, 372 Mass. 871 (1977), and cases cited.

Judgment is to be entered dismissing the petition for a writ of habeas corpus.

*So ordered.*