# ELMER L. THOMPSON, petitioner.

Suffolk.  January 7, 1985. — April 10, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Sex Offender. Due Process of Law,* Sex offender. *Constitutional Law,* Equal
protection of laws, Sex offender.

In a proceeding under G. L. c. 123A, § 9, seeking discharge from the
treatment center at M.C.I., Bridgewater, the judge did not err in refusing
to consider evidence offered by the petitioner concerning the possibility
of confinement at a facility less restrictive than the treatment center,
inasmuch as discharge proceedings under § 9 are to determine the single
issue of whether or not the petitioner is a sexually dangerous person.
[504-505]

Although the petitioner in a discharge proceeding under G. L. c. 123A, § 9,
is not entitled, in that proceeding, to consideration of alternatives to
confinement at the treatment center at M.C.I., Bridgewater, he is not
thereby denied due process of law in light of other statutory and constitu-
tional provisions affording an opportunity for judicial consideration of
the question. [505-507]

The fact that those who are deemed mentally ill under G. L. c. 123 have a
right to an annual review of whether placement in an institution less
restrictive than Bridgewater State hospital would be appropriate, whereas
those committed to the treatment center as sexually dangerous persons
under G. L. c. 123A have no correlative right, does not violate the equal
protection clause of the Fourteenth Amendment to the United States
Constitution. [507-509]

PETITION filed in the Superior Court Department on July
18, 1979.

The case was heard by *John J. Irwin, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*H. Daniel Hassenfeld* for the petitioner.

*Linda G. Katz,* Assistant Attorney General, for the Common-
wealth.

HENNESSEY, C.J. This is an appeal from an order of the
Superior Court denying Elmer L. Thompson's petition for dis-
charge from the treatment center for sexually dangerous persons

at M.C.I., Bridgewater (treatment center). Thompson contends that the judge erred in refusing, under G. L. c. 123A, § 9, to consider evidence which would tend to establish that confinement in an environment less restrictive than the treatment center is warranted. We disagree, and conclude that there was no error in the denial of Thompson's petition.

Elmer L. Thompson (petitioner) has been confined at the treatment center since his commitment in 1969 as a sexually dangerous person. See *Thompson, petitioner*, 5 Mass. App. Ct. 282, 283 (1977). On July 18, 1979, he filed a petition in the Superior Court under G. L. c. 123A, § 9,[1] for a hearing to determine whether he was eligible for discharge. Prior to the hearing, the petitioner requested that the judge rule on the admissibility of evidence concerning the possibility of confinement at a facility less restrictive than the treatment center. The judge ruled that such evidence was inadmissible at a c. 123A, § 9, hearing. On December 5, 1983, the judge denied the peti-

---

[1] General Laws c. 123A, § 9, as amended by St. 1966, c. 608, provides, in relevant part: "Notwithstanding any provisions of this section, any person committed to the center, or a branch thereof, shall be entitled to have a hearing for examination and discharge once in every twelve months upon the filing of a written petition by the committed person, his parents, spouse, issue, next of kin or any friend. A copy of said petition shall be sent to the district attorney for the district where the original proceedings were commenced and to the parole board within fourteen days after the filing thereof. Said petition shall be filed in a superior court for the district in which said person was committed, and the court shall set a date for a speedy hearing. The hearing shall be conducted in the same manner as is provided for in sections five and six. The court shall issue whatever process is necessary to assure the presence in court of the committed person and shall hear the recommendations of the department of mental health and the parole board regarding the disposition of the petition. The department of mental health shall make periodic examinations every year of any person committed to the center in order to determine the progress of cure, and shall give an annual report of its findings to the district attorney for the district from which the person was committed, and the parole board. The psychiatrists appointed to make examinations under this section shall have access to all records of the department of correction pertaining to the person being examined. All records concerning the progress, diagnosis and examinations made by examining psychiatrists shall be available to the parole board to assist them in their determinations of parole. Upon a finding by the court that such person is no longer a sexually dangerous person, it shall order such person to be discharged, or conditionally released from the center."

tion for discharge, finding that the petitioner continued to be a sexually dangerous person. The petitioner appealed, and we transferred the case to this court on our own motion.

1. *G. L. c. 123A, § 9.*

According to G. L. c. 123A, § 9, "[u]pon a finding by the court that such person is no longer a sexually dangerous person, it shall order such person to be discharged, or conditionally released from the center."[2] As the clear language of the statute requires, we have concluded that "under G. L. c. 123A, § 9, '[a]n absolute finding that the individual is no longer sexually dangerous is a condition precedent to *any form* of judicial release from confinement'" (emphasis added). *Conlan* v. *Commonwealth*, 383 Mass. 871, 872 (1981), quoting *Commonwealth* v. *Travis*, 372 Mass. 238, 248 (1977). *Travers* v. *Commonwealth*, 13 Mass. App. Ct. 924, 925 (1982). In this case, the judge concluded that the petitioner was, at the time of the hearing, a sexually dangerous person. Thus any consideration of alternatives to confinement at the treatment center, in a proceeding under the discharge provisions of G. L. c. 123A, § 9, would have been improper.[3] A contrary interpretation of the statute would be inconsistent with our view that "[p]roceedings under G. L. c. 123A, § 9, are to determine the single issue whether or not the petitioner is a sexually dangerous person," *Davis, petitioner,* 383 Mass. 645, 649-650 (1981), and that "[i]n order to simplify and expedite hearings under G. L. c. 123A, § 9, such hearings should be restricted to the sole issue for which they were intended." *Id.*

General Laws c. 123A, § 9, provides that discharge hearings are to "be conducted in the same manner as is provided for in

---

[2] In *Commonwealth* v. *Travis*, 372 Mass. 238 (1977), we held that it was a violation of the due process clause to recommit an individual for breach of a release condition, after such individual had been discharged on the ground that he was no longer sexually dangerous. "Since the due process clause mandates that a person may be confined under G. L. c. 123A only so long as he is a sexually dangerous person, violation of a release condition cannot by itself justify recommitment." *Id.* at 248.

[3] We recognize that under the parole provisions of G. L. c. 123A, § 9, an individual may be paroled from the treatment center "without a finding that he is no longer sexually dangerous." *Commonwealth* v. *Travis*, 372 Mass. 238, 247 n.4 (1977).

sections five and six." Both § 5 and § 6, which govern the
initial commitment proceedings, provide for consideration of
alternatives to commitment at the treatment center. See, e.g.,
*Commonwealth* v. *Connarton*, 383 Mass. 777, 778 & n.1
(1981); *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 646
(1978). Therefore, the petitioner contends that a judge should
also allow consideration of alternatives in a § 9 discharge
proceeding. We agree with the petitioner that the Legislature
intended that § 9 hearings be modelled *procedurally* after hear-
ings conducted under §§ 5 and 6. Nonetheless, we conclude
that the substantive prerequisite for discharge under § 9, i.e.,
a finding that the petitioner is no longer sexually dangerous,
is substantially different from the criteria to be used under §§ 5
and 6 in determining whether alternatives to the treatment
center are appropriate. See *Commonwealth* v. *Travis, supra*
at 247 n.4. See also G. L. c. 123A, § 6A (petition for removal
of restrictions imposed under § 6A "*shall to the extent appli-
cable*" be treated as petition for release under § 9 [emphasis
added] ).[4]

2. *Due Process.*

Individuals who have been civilly committed have a due
process right to "reasonably nonrestrictive confinement condi-
tions." *Youngberg* v. *Romeo*, 457 U.S. 307, 324 (1982).
Though *Youngberg* involved the right to be free from unneces-
sary restraint within an institution, *id.* at 315, its holding has
been extended by at least one lower court to a situation where
individuals have claimed a liberty interest in the availability
of less restrictive facilities or community placement. See *As-
sociation for Retarded Citizens of N. Dakota* v. *Olson*, 561 F.
Supp. 473, 486 (D. N.D. 1982), aff'd on other grounds, 713

---

[4] *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 646 (1978), is not to the
contrary. In that case we held that G. L. c. 123A, § 5, requires "an explicit
determination whether there is at this time a feasible and better alternative"
to confinement at the treatment center. We concluded that "[t]he matter
may be handled at the annual review of the defendant's status, see c. 123A,
§ 9, if that would not entail delay." *Rodriguez* thus authorizes the evaluation
of less restrictive alternatives at a § 9 discharge hearing, but only for the
limited purpose of curing defects in the original § 5 commitment proceeding.

F.2d 1384 (8th Cir. 1983). But see *Society for Good Will to Retarded Children* v. *Cuomo*, 737 F.2d 1239, 1247-1249 (2d Cir. 1984) (no constitutional right to community placement); *Phillips* v. *Thompson,* 715 F.2d 365, 367-368 (7th Cir. 1983) (same). The petitioner claims that an interpretation of G. L. c. 123A, § 9, which does not allow for the consideration of alternatives to the treatment center, is inconsistent with his right to "freedom from undue restraint." *Youngberg* v. *Romeo, supra* at 319.

We need not here decide whether the petitioner has a constitutional liberty interest in placement in a facility which is less restrictive than the treatment center. Assuming that the petitioner has such an interest, we conclude that it is adequately protected by various provisions of the statute governing the commitment of sexually dangerous persons. As already noted, G. L. c. 123A, §§ 5 and 6,[5] both allow a judge to consider alternatives to the treatment center at the initial commitment proceeding. See *Commonwealth* v. *Connarton*, 383 Mass. 777, 778 (1981); *Commonwealth* v. *Rodriguez,* 376 Mass. 632, 646 (1978). Moreover, according to G. L. c. 123A, § 9, "[a]ny person committed to the center for treatment and rehabilitation under section five or section six shall be eligible for parole." Individuals shall be presented to the parole board "at least once

---

[5] For example, G. L. c. 123A, § 6, as amended through St. 1978, c. 478, § 72, provides, in relevant part: "If the court finds that the prisoner is not a sexually dangerous person, it shall order him to be reconveyed to the institution wherein he was serving his sentence, there to be held until the termination of his ·sentence or until otherwise discharged. If the court finds that such prisoner is a sexually dangerous person, it shall commit him to the center, or a branch thereof, for an indeterminate period of a minimum of one day and a maximum of such person's natural life, for the purpose of treatment and rehabilitation, or it may commit such person to a mental institution or place him upon out-patient treatment, or make such other disposition upon the recommendation of the department of mental health consistent with the purpose of treatment and rehabilitation. Such prisoner shall be held in custody under sufficient security to protect society, and he shall be subject to all laws, rules and regulations which govern inmates of the institution to which he has been committed, in so far as may be compatible with the treatment provided for by this chapter, and he shall be entitled to such rights and privileges of such inmates, in so far as may be compatible with such treatment."

during the first twelve months following commitment . . . and at least once in every three-year period thereafter, and at any time upon the recommendation of two psychiatrists." *Id.* The parole board "may grant such person a parole permit to be at liberty upon such terms and conditions as it shall prescribe, including the condition he receive out-patient treatment, and any other condition that the commissioner of mental health may recommend." *Id.* We believe that these parole provisions ought to afford those committed to the treatment center ample opportunity to be heard on the issue of alternative, less restrictive, modes of confinement. See generally *Commonwealth* v. *Nassar,* 380 Mass. 908, 917-918 (1980). Of course, if one who has been committed under G. L. c. 123A, §§ 5 and 6, is wrongly confined to the treatment center though less restrictive facilities would be adequate, or is wrongly deprived of the opportunity for parole from the treatment center, other remedies unrelated to G. L. c. 123A are available. See, e.g., *Andrews, petitioner,* 368 Mass. 468 (1975) (habeas corpus); *Thompson, petitioner,* 5 Mass. App. Ct. 282 (1977) (same).

3. *Equal Protection.*

The petitioner also contends that our interpretation of the discharge provisions of G. L. c. 123A, § 9, would violate his right to equal protection guaranteed by the State and Federal Constitutions. Specifically, the petitioner argues that those who are deemed mentally ill under G. L. c. 123 have a right to an annual review of whether placement in an institution less restrictive than Bridgewater State hospital would be appropriate, see G. L. c. 123, § 8 (*b*) and (*d*); *Commonwealth* v. *Nassar, supra,* whereas there is no correlative right for sexually dangerous persons committed to the treatment center under G. L. c. 123A. The petitioner contends that this disparity is impermissible under our decision in *Andrews, petitioner,* 368 Mass. 468 (1975), where we held that "any significant procedural rights granted to persons involuntarily committed under c. 123, must be extended to persons involuntarily committed under c. 123A, § 6." *Id.* at 481. See generally *Baxstrom* v. *Herold,* 383 U.S. 107, 114-115 (1966).

Our holding in *Andrews, supra,* is limited to those cases where there are unjustified differences in statutory schemes

which have "generally similar functions and effects." *Id.* at 480. Because confinement at the treatment center as a sexually dangerous person, and civil commitment to Bridgewater State hospital, do not have "generally similar functions and effects," we conclude that the differences in the availability of less restrictive confinement under c. 123 and c. 123A are fully justified.

The Bridgewater State hospital is reserved for those who, if not retained "in strict custody," "would create a likelihood of serious harm." G. L. c. 123, § 8 (*b*). See also G. L. c. 123, §§ 7 (*b*) and 13. As we recognized in *Nason* v. *Superintendent of Bridgewater State Hosp.,* 353 Mass. 604, 608-609 (1968), "Bridgewater . . . is designed for inmates deemed to constitute a danger to themselves or to others if confined outside of a maximum security setting." Thus, confinement at Bridgewater is inappropriate for those not requiring maximum security, see *Bradley* v. *Commissioner of Mental Health,* 386 Mass. 363 (1982), and individuals committed there are entitled to regular opportunities to be heard on the prospect of placement at another less confining mental health facility. See G. L. c. 123, § 8 (*b*) and (*d*).

In contrast, patients at the treatment center are not all characterized by a need for strict security, but instead by the nature of the mental disorder from which they suffer. See G. L. c. 123A, § 2. Some sexually dangerous offenders need maximum security, see G. L. c. 123A, § 6A, while less restrictive confinement is appropriate for others. Accordingly, the regulations at the treatment center recognize the varying requirements of its patients by providing that they "shall be housed in the least restrictive conditions which are consistent with . . . security needs." 104 Code Mass. Regs. § 8.01 (2) (1982). See also § 8.03 (3). The treatment center is thus divided into separate "wards" of varying degrees of restriction, and a patient is to be assigned to that ward where the "level of security best matches the security needs indicated by the patient's physical and mental condition." 104 Code Mass. Regs. § 8.10 (1) (1982). In short, unlike Bridgewater State hospital, the treatment center itself can provide a less restrictive environ-

ment for those not requiring maximum security. The flexibility of the environment at the treatment center diminishes the need for periodic review of alternative institutions. Therefore, we conclude that the differences between the relevant sections of G. L. c. 123 and G. L. c. 123A, providing for less restrictive modes of confinement, are rationally sustainable, see *Baxstrom* v. *Herold, supra* at 111, and thus permissible.

*Order denying petition affirmed.*