SHERMAN MILLER[1] *vs.* COMMISSIONER OF CORRECTION &
others.[2]

No. 92-P-665.

Plymouth. September 23, 1993. - February 28, 1994.

Present: DREBEN, KAPLAN, & GILLERMAN, JJ.

*Civil Rights*, Attorney's fees. *Mental Health. Sex Offender. Constitutional Law*, Sex offender, Imprisonment.

A plaintiff, a patient at the Treatment Center for Sexually Dangerous Persons, who obtained interim and permanent injunctions ordering the Commissioner of Correction and others to comply with Department of Correction regulations relative to the processing and delivery of the plaintiff's privileged mail, to his telephone access, and his right to treatment, was a "prevailing party" in his claims brought under the Civil Rights Act, 42 U.S.C. § 1983. [116-117]

A patient committed to the Treatment Center at Bridgewater had a "liberty interest" in his mail and telephone privileges and his classification status; an action he successfully brought under the Civil Rights Act, 42 U.S.C. § 1983, against the Departments of Correction and Mental Health and others, to protect those interests raised "substantial" constitutional claims for purposes of allowing an award of attorney's fees under the Act. [118-120]

A pro se plaintiff who prevailed on substantial constitutional claims in an action brought under the Civil Rights Act, 42 U.S.C. § 1983, was entitled to reasonable attorney's fees under the Act for counsel the plaintiff hired and paid for to assist him on a standby basis [120-121]; the matter was remanded for a determination of the reasonable fees to be awarded under the principles of *Hensley* v. *Eckerhard*, 461 U.S. 424, (1983) [121].

---

[1] Two other plaintiffs intervened in the action in the trial court but only Miller claimed an appeal. We shall refer to the plaintiff in the singular throughout.

[2] Other defendants from the Department of Correction were the superintendent, Massachusetts Correctional Institution at Bridgewater, director of security at the Massachusetts Treatment Center for Sexually Dangerous Persons, and two correctional officers. The acting administrator of the Massachusetts Treatment Center for Sexually Dangerous Persons of the Department of Mental Health also was a defendant.

CIVIL ACTION commenced in the Superior Court Department on May 23, 1986.

The case was heard by *John D. Sheehan*, J.

*Sherman Miller*, pro se.

*Nancy W. Geary*, Assistant Attorney General, for the defendants.

DREBEN, J. The issue to be decided is whether the pro se plaintiff who hired and paid for standby counsel to assist him in this civil rights action is entitled to reasonable attorney's fees for such counsel. A judge of the Superior Court concluded that the plaintiff did not sustain his burden of justifying an award of attorney's fees. We reverse and remand for further proceedings.

The claim for attorney's fees is based on 42 U.S.C. § 1988 (1982), which provides that in actions brought under the Civil Rights Act, 42 U.S.C. § 1983 (1982),[3] "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." In order to recover, the plaintiff must show that he was the "prevailing party" and that his complaint alleged a "substantial constitutional claim." *Cronin* v. *Tewksbury*, 405 Mass. 74, 76 (1989). The defendants argue that the plaintiff does not satisfy either of these two inquiries and that, in any event, he cannot prevail because he is a pro se litigant. We disagree.

The plaintiff, a patient at the treatment center for sexually dangerous persons, brought this action alleging, among other grievances (in amended and supplemental complaints), that his rights were abridged in violation of State and Federal statutory and constitutional provisions. More particularly, he claimed that he was deprived of his right to reasonable telephone access, his right to receive unopened privileged mail, and his right to treatment. His contention with respect to his right to treatment was that although he had been classified

---

[3]Title 42 U.S.C. § 1983 (1982) provides in relevant part that "[e]very person who, under color of any statute, . . . regulation, custom, or usage, of any State . . . subjects . . . any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

as a patient with maximum privileges, including the right to have his room unlocked, his classification status was downgraded to moderate privilege with the result that he was afforded fewer treatment opportunities and benefits and, in addition, was housed with a number of violent and destructive patients. The reason for his changed classification was a policy instituted by the treatment center staff that only those patients who volunteered to "double-bunk" (share a room) would have maximum privileges.

Prior to trial (on December 1, 1986) a preliminary injunction issued ordering the defendants to comply immediately with regulations relating to the processing and delivery of the plaintiff's privileged mail and telephone access. On July 7, 1987, the judge also ordered the defendants to take reasonable steps to prevent the plaintiff from becoming a victim of unlawful and violent actions of other patients.

After a six-day trial, a judgment entered[4] ordering the defendants to comply with the regulations relating to their processing and delivery of the plaintiff's privileged mail (104 Code Mass. Regs. § 8.03[1][a][3][1986][5] ) and telephone access (104 Code Mass. Regs. § 8.03[1][d][1986]) and declaring that the selection of ward assignments (minimum privilege, moderate privilege, and maximum privilege) could not be based on volunteering to double-bunk and that the plaintiff could not be precluded from assignment to maximum privilege status solely on the basis of his refusal to double-bunk. The judge declined to award damages because the plaintiff did not show that he was actually deprived of required treatment, and, presumably for this reason, as there was no further explanation, the judge denied the plaintiff attorney's fees.

1. The plaintiff was a prevailing party under the tests set forth by the United States Supreme Court. "A prevailing party [is] one who has succeeded on any significant claim affording it some of the relief sought, either pendente lite or

---

[4]Although the trial was held in July, 1987, findings and an order for judgment did not issue until December 6, 1990.

[5]The regulations cited are reproduced in an appendix to the opinion.

at the conclusion of the litigation." *Texas State Teachers Assn.* v. *Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792-793. *Farrar* v. *Hobby*, 113 S. Ct. 566, 573 (1992). Here the plaintiff obtained interim and permanent injunctions ordering the defendants to comply with their regulations relative to the processing and delivery of the plaintiff's privileged mail and telephone access.[6] That no change in the regulations was ordered or that the defendants stipulated to the inclusion of the provisions of the preliminary injunction in a permanent order does not, as the defendants contend, prevent the plaintiff from being a prevailing party. See *Maher* v. *Gagne*, 448 U.S. 122, 129 (1980) (settlement or consent judgment does not weaken claim to fees).

The declaration that the plaintiff may not be precluded from assignment to maximum privilege status solely on the basis of his refusal to double-bunk altered materially the relations of the parties. It obviously "affect[ed] the behavior of the defendant[s] toward the plaintiff," *Rhodes* v. *Stewart*, 488 U.S. 1, 4 (1988), and produced "the termination of some conduct" on the part of the defendants. *Id.*, quoting from *Hewitt* v. *Helms*, 482 U.S. 755, 761 (1987). The plaintiff also obtained an order prior to trial requiring the defendants to take reasonable steps to protect him from unlawful and violent actions of other patients. In view of the interim and final relief accorded, the plaintiff achieved significant benefits by bringing the action. See *Cronin* v. *Tewksbury*, 405 Mass. at 76. The defendants' claims to the contrary are frivolous.

---

[6]The defendants point to the judge's finding that the plaintiff did not demonstrate that the defendants violated their regulation as to telephone access. The injunction as to telephone access was not contained in the original order for judgment but issued in an amended judgment on the plaintiff's motion, the judge explaining that, through oversight, he had not included that part of the preliminary injunction in his original judgment. Whether the finding in his memorandum should also be changed is a matter for the judge to clarify on remand.

2. As to the substantiality of the constitutional claims, a "painstakingly minimal standard" is applicable. *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 312, 319 (1982). A claim meets the test unless "it is obviously without merit or . . . its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." *Id.* at 318, quoting from *Hagans* v. *Lavine*, 415 U.S. 528, 537 (1974) (internal quotation marks omitted).

The question is "whether [the] claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit,' as not to involve an appropriate controversy." *Cronin* v. *Tewksbury*, 405 Mass. at 77, quoting from *Oneida Indian Nation* v. *County of Oneida*, 414 U.S. 661, 666 (1974).

As to telephone access, privileged mail, and maximum privileges, the minimal standards have been met. Prisoners have a "liberty interest" in "uncensored communication by letter . . . even though qualified of necessity by the circumstances of imprisonment." *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 386-387 (1985), quoting from *Procunier* v. *Martinez*, 416 U.S. 396, 418 (1974). Civilly committed patients at the treatment center may be entitled to greater privileges than prisoners, and, indeed, the regulations, unlike those for prisoners, provide that a patient may be required to open mail in the presence of a staff member only if there is a reason to believe that contraband is enclosed. See 104 Code Mass. Regs. § 8.03 (1)(a)(3) (1986). An alleged violation of the regulation meets the requirement of constitutional substance. Similar constitutional considerations apply to telephone access. See *Tucker* v. *Randall*, 948 F.2d 388, 390-391 (7th Cir. 1991) (unreasonable restrictions on prisoner's telephone access may violate First, Sixth, and Fourteenth Amendments).

"[A] person committed for treatment of mental illness has a due process right to receive treatment . . . and the right to receive the least restrictive or least burdensome control nec-

essary to pursue rehabilitation." *Commonwealth* v. *Rosenberg*, 410 Mass. 347, 360 (1991). See also *Thompson, petitioner*, 394 Mass. 502, 505-506 (1985), discussing the rights of treatment center patients. The trial judge ruled that the plaintiff is "entitled to be housed in the least restrictive conditions which are consistent with [his] security needs under existing regulations" and found that "[t]he evidence supports the conclusion that the plaintiff[ ][is] best suited to be placed on the maximum privilege ward." He concluded that volunteering for double-bunking is not an appropriate criterion and has "no rational relationship" to placement and that the plaintiff [was] entitled to a declaration that this criterion "exceeded the discretion afforded to the Administrator under [104 Code Mass. Regs. § 8.10 (1986)]."[7] The interim order requiring the defendants to take reasonable steps to protect the plaintiff from other inmates also has constitutional overtones. *Youngberg* v. *Romeo*, 457 U.S. 307, 324 (1982) (involuntarily committed resident of an institution for mentally retarded persons "enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests").

Quite apart from the foregoing bases supporting the "substantiality" of the plaintiff's claims, the Massachusetts regulations which contain " 'explicitly mandatory language in connection with requiring specific substantive predicates' [also may] create [constitutionally protected] liberty interests." *O'Malley* v. *Sheriff of Worcester County*, 415 Mass. 132, 137 (1993).

That the judge followed the traditional policy of refraining from deciding the case on constitutional grounds and resolved the plaintiff's claims under State law — a basis which,

---

[7]The defendants misstate the judge's finding when they claim that "although the court declared that the Administrator could not use voluntariness to double-bunk as a criterion of assignment, the court specifically found that there was no violation of the petitioner's rights pursuant to G. L. c. 123A, § 6, or of the regulations pursuant thereto under [104 Code Mass. Regs. §§ 8.00] et seq." The court's finding relied on by the defendants was limited to other claims of the plaintiff.

standing alone, would not support an award of fees under § 1988 — does not preclude an award of fees. The legislative history of § 1988 makes clear that Congress intended fees to be awarded if the "constitutional claims are 'substantial,' and arise from the same nucleus of facts on which the State law claims are based." *Stratos* v. *Department of Pub. Welfare*, 387 Mass. at 317. See *Maher* v. *Gagne*, 448 U.S. at 132-133 n.15.

Once a plaintiff meets his burden of showing that he is a prevailing party and that he has raised "substantial" constitutional claims, discretion to deny fees is limited; successful plaintiffs should ordinarily recover an attorney's fee in the absence of special circumstances which would render such an award unjust. *Blanchard* v. *Bergeron*, 489 U.S. 87, 89 n.1 (1989). *Stratos* v. *Department of Pub. Welfare*, 387 Mass. at 319. *Globe Newspaper Co.* v. *Commissioner of Rev.*, 410 Mass. 188, 197 (1991). "[T]he court must have, and express, special reasons if it is to refuse" to award fees, *Lewis* v. *Kendrick*, 944 F.2d 949, 954 (1st Cir. 1991),[8] unless the over-all success of the plaintiff is so minimal that the court may lawfully award no fees. See *Farrar* v. *Hobby*, 113 S. Ct. at 575.

3. Having determined that several of the plaintiff's claims meet the requirement of "substantiality" and that he is a prevailing party, we turn to the question whether the plaintiff may receive payment for the reasonable costs of standby counsel. Although the defendants are correct that a pro se litigant is not entitled to attorney's fees for his own services, *Kay* v. *Ehrler*, 499 U.S. 432 (1991) (lawyer who represents himself not entitled to fees under § 1988), the plaintiff is not seeking compensation for his own efforts, but rather for attorney's fees that he has incurred. The language of § 1988 supports the recovery of such fees, see *supra* at 115, and there is no reason of policy which precludes an award of fees to a plaintiff who cannot afford full representation of counsel or who, for other reasons, chooses only to have the assistance of standby counsel. To the contrary, the linchpin of the

---

[8]For an example of special circumstances see *Nadeau* v. *Helgemoe*, 581 F.2d 275, 279 n.3 (1st Cir. 1978).

court's holding in *Kay* v. *Ehrler, supra,* was that "awards of counsel fees to *pro se* litigants — even if limited to those who are members of the bar — would create a disincentive to employ counsel . . . . The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." *Id.* at 438. Since the purpose of § 1988 is "to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights," *ibid.,* we conclude that the plaintiff is entitled to reasonable attorney's fees, as established by the court, for the services of standby counsel.[9]

4. The determination of the amount of fees to be awarded to the plaintiff requires a remand to the Superior Court. The plaintiff brought a number of claims on which he was unsuccessful. If those claims are "distinct in all respects from his successful claims, the hours spent [by standby counsel] on the unsuccessful claim[s] should be excluded in considering the amount of a reasonable fee. Where a lawsuit [, however,] consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the . . . court did not adopt each contention raised." *Hensley* v. *Eckerhart,* 461 U.S. 424, 440 (1983).

Accordingly, that portion of the judgment which disallows attorney's fees is reversed and the matter is remanded for the judge to determine the reasonable fees to be awarded for standby counsel under the principles of *Hensley* v. *Eckerhart, supra.* See also *Nydam* v. *Lennerton,* 948 F.2d 808, 812 (1st Cir. 1991).

*So ordered.*

---

[9]Our conclusion is somewhat buttressed by the fact that attorney's fees under § 1988 are not limited to persons enrolled as counsel of record but include persons who assist such counsel, whether they be lawyers (see *Major* v. *Treen,* 700 F. Supp. 1422, 1430 [E.D. La. 1988]), paralegals (*Missouri* v. *Jenkins,* 491 U.S. 274, 285 [1989]; *Crane* v. *Commissioner of Pub. Welfare,* 400 Mass. 46, 50 [1987]), or law students (see, e.g., *Bolden* v. *Pennsylvania State Police,* 491 F. Supp. 958, 965 [E.D. Pa. 1980]).

APPENDIX.

Title 104 Code Mass. Regs. § 8.03 (1)(a)(3) (1986):

"All incoming mail sent to a patient, other than mail from the patient's attorney, his personal physician, his clergyman, a court of law, members of the General Court, the Governor, or the Commissioner, may be opened to check for contraband. A patient may be required to open any mail in the presence of a Treatment Center staff member, if in the judgment of the Administrator there is reason to believe that contraband is enclosed. The reasons for such opening shall be noted in the record of the patient. Incoming and outgoing mail shall not be read or censored by a staff member under any circumstances."

Title 104 Code Mass. Regs. § 8.03 (1)(d) (1986):

"*Telephones.* Every patient shall have reasonable access to enclosed telephones to place and receive confidential calls. Every patient shall have access to coin currency from a telephone fund for the purpose of placing such calls, including collect calls. The fund will be reimbursed from the patient's personal fund via money transfer."

Title 104 Code Mass. Regs. § 8.10 (1986):

"*Tier System of Security*:

"(1) *General System Description.* Every patient housed at the Treatement Center shall be kept in one of the following wards, arranged in order of descending security: minimum privilege, moderate privilege, and maximum privilege. The clinical staff shall, within its discretion, assign each patient to the ward whose level of security best matches the security needs indicated by the patient's physical and mental condition.

"(2) *Purpose.* The aim of the tier system is to provide that each patient shall be housed in the least restrictive conditions consistent with security and treatment.

"(3) *Criteria for Assignment.* Criteria for selection for assignment to the various wards shall be developed by the Administrator or his/her designee and shall be posted in each ward. In addition rules shall be developed governing the operation of the several wards by the

Administrator or his/her designee and shall also be posted. The Administrator or his/her designee may from time to time change these posted criteria and rules as changing circumstances and conditions require."