ARTHUR PAGE *vs.* COMMONWEALTH.

Suffolk.   March 12, 1982. — April 1, 1982.

Present: GRANT, GREANEY, & SMITH, JJ.

*Sex offender.   Practice, Civil,* Sex offender.   *Evidence,* Sexual misbehavior, Sex offender.

At the hearing on a petition under G. L. c. 123A, § 9, for discharge from commitment as a sexually dangerous person, the Commonwealth's evidence was not such as would warrant a trier of fact in concluding beyond a reasonable doubt that the petitioner, who had been committed in 1962, continued to be a sexually dangerous person at the time of the hearing.   [386-389]

PETITION filed in the Superior Court on December 15, 1964.

The case was heard by *Donohue,* J.

*Jane Larmon White* for the petitioner.

*Michael B. Roitman,* Assistant Attorney General, for the Commonwealth.

GRANT, J.   In 1959 Arthur Page, the petitioner herein, was discharged from Massachusetts Correctional Institution, Concord, as required by the decision in *Commonwealth* v. *Page,* 339 Mass. 313 (1959).   In 1960 he was convicted in the Superior Court of violations of G. L. c. 272, §§ 16 and 35A, and given consecutive sentences, the second of which would expire no later than August 17, 1968.   On December 19, 1962, in proceedings conducted under G. L. c. 123A, § 6 (as appearing in St. 1958, c. 646, § 1), he was determined to be a sexually dangerous person (SDP) and committed to the center for the treatment of the sexually dangerous which is maintained by the Department of Mental Health (Department) at M.C.I., Bridgewater (center).

On May 15, 1981, a hearing was held in the Superior Court on Page's petition under G. L. c. 123A, § 9 (as amended through St. 1966, c. 608), by which he sought to be discharged from the center. The Commonwealth called two psychiatrists. The first, Dr. Robert F. Moore, confirmed the advice he had given in a report submitted by him earlier in 1981 (see G. L. c. 123A, §§ 4, 5, 6 and 9) that he "[could not] offer substantial evidence that [the petitioner] is still [an SDP]." The second, Dr. William M. Nagler, confirmed the advice and opinion in his report (also submitted earlier in 1981) that the petitioner "has displayed no recent sexually violent, assaultive or acting out behavior" and "is no longer [an SDP]."[1] The Commonwealth's only other witness, one Dennis McNamara, submitted the formal recommendation of the Department under § 9 (see *Anderson, petitioner*, 362 Mass. 872, 872 [1972]; *Leavis, petitioner*, 12 Mass. App. Ct. 958 [1981]; contrast *Davis, petitioner*, 8 Mass. App. Ct. 732, 734 [1979]) which he had prepared and the essence of which is set out in the margin.[2] Other

---

[1] That report includes the following paragraph: "In April of 1975, Mr. Page was seen by Harry Kozol, M.D. At that time Dr. Kozol felt that Mr. Page was no longer a sexually dangerous person, but stated that the patient expressed a desire to remain at the Treatment Center rather than be transferred to another institution. Dr. Kozol stated 'It is virtually certain that he could not adjust or adapt to an existence in the general community by reason of physical and emotional limitation and age and length of institutionalization. It would seem to be an unkindness to parole or otherwise release Arthur at this time. While he had displayed little aggressiveness and no preoccupation with sexual matters, we cannot guarantee that every vestige of potential has been extirpated. Does it not seem to you that ends of kindness as well as caution might not be best served by permitting Arthur to remain here?'"

[2] "Mr. Page has not profited from his commitment despite serious attempts to engage him in treatment. Instead, he has progressively become more institutionalized. He has, in the past, aborted legal efforts toward release when they began to look promising. He has an understandable, if exaggerated, fear of change and the unknown. *At this point it is 20 years since his offenses and the original finding of sexual dangerousness. It is clear that there have been no substantive positive changes as a result of his commitment and treatment. There is no good data to suggest that his sexual pathology has been ameliorated in any way* [emphasis supplied]. On

evidence which might be thought material will be discussed later.[3]

At the conclusion of the Commonwealth's case the petitioner filed a motion for a required finding in his behalf. Compare *Davis, petitioner,* 383 Mass. 645, 649 (1981); Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). The motion was denied, and the petitioner has appealed from the subsequent denial of his petition. We reverse and order the discharge of the petitioner.

A brief review of basic principles will be helpful. The statutory definition of an SDP which is set out in G. L. c. 123A, § 1 (as appearing in St. 1958, c. 646, § 1),[4] does not vary depending on whether a court is considering an original commitment under § 5 or § 6 of that chapter or the

---

the other hand, the effects of time and aging may have had an immeasurable effect. Given this set of circumstances, it may be reasonable to test Mr. Page in a less restrictive environment such as a state mental hospital. It is a difficult decision in that we can not predict his being a safe risk with any level of confidence and the prognosis for his demonstrating the kind of change that would lead to a prediction of safeness is very dim indeed.

"Although the options available to the court are not clear, it is apparent that Mr. Page continues to require institutional care for the foreseeable future. He does not, however, require the security of this Center."

[3] On several occasions the judge made free with the hearsay rule by ignoring or professing his inability to comply with properly submitted requests for limitations on the use to which particular items of evidence might be put (see *Andrews, petitioner,* 368 Mass. 468, 475 [1975]; *Davis, petitioner,* 383 Mass. 645, 647 n.2 [1981]; *Commonwealth* v. *Lamb,* 1 Mass. App. Ct. 530, 532-533 [1973], *S.C.* 365 Mass. 265 [1974]; *Thompson, petitioner,* 5 Mass. App. Ct. 282, 284, 285 n.4 [1977]; *Davis, petitioner,* 8 Mass. App. Ct. at 735-736 & n.3), and some improperly admitted hearsay is reflected almost verbatim in the judge's findings. Nothing in this opinion turns on any of the erroneous rulings, as our ultimate conclusion would not change even if all the evidence had been properly admitted.

[4] "Any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires."

possibility of a release under § 9.  See *McHoul* v. *Common-wealth*, 10 Mass. App. Ct. 878 (1980).  In either type of proceeding the Commonwealth has the burden of proving beyond a reasonable doubt that the person in question is (present tense) one who suffers from a "general lack of power to control his sexual impulses . . . and who as a result *is* likely to attack or otherwise inflict injury on the objects of his *uncontrolled or uncontrollable desires*" (§ 1, emphasis supplied).  See *Commonwealth* v. *McHoul*, 372 Mass. 11, 13-16 (1977).  The attack which is postulated is one which is sexual in character.  *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 643 n.15, 645 (1978).  Evidence of past sexual misconduct, standing by itself, will not support a finding of sexual dangerousness which will justify an original commit-ment under § 5 or § 6 (*Commonwealth* v. *Walsh*, 376 Mass. 53, 58 [1978]), and any ruling that such misconduct, stand-ing by itself, will justify a retention at the center would not only render illusory the right to recurrent review which is afforded by § 9 (and which can be invoked as early as the expiration of the first year of a commitment) but also de-stroy the constitutional underpinnings of §§ 5 and 6.  See *Andrews, petitioner*, 368 Mass. 468, 483-491 (1975).

We think the foregoing principles were overlooked by the judge when he ruled on the petitioner's motion.  The gener-al question raised by the motion was whether the Common-wealth had sustained its burden of producing evidence from which a rational trier of fact could conclude beyond a rea-sonable doubt that the petitioner continued to be an SDP at the time of the hearing.  *Andrews, petitioner*, 368 Mass. at 485, 486-489.  *Davis, petitioner*, 383 Mass. at 649, 650. *Davis, petitioner*, 8 Mass. App. Ct. at 735-736.  *Travers* v. *Commonwealth, post* 924, 924-925 (1982).  The precise question raised by the motion was the petitioner's "ability to control [his] sexual impulses at [that] time . . ., not at the time (or times) of [his] earlier sexual misconduct" (*McHoul* v. *Commonwealth*, 10 Mass. App. Ct. at 878) more than

twenty years ago. The Department's approach to that question, which is exemplified by the italicized portion of the report which is quoted in n.2 hereof, turns the whole problem on its head. A judge who follows that approach invites an inquiry as to whether he has reversed the burden of proof.[5] See and compare *Commonwealth* v. *Walsh*, 376 Mass. at 60-61. Contrast *Travers* v. *Commonwealth, supra* at 924.

We turn to the specific evidence of present sexual dangerousness offered by the Commonwealth and relied on by the judge. The Commonwealth points to two letters the petitioner wrote to a female therapist at the center, one of them approximately fifteen months prior to the hearing and the other some six weeks after the first. In the first letter the petitioner advised the addressee of his continued virility, of his belief that she is very pretty, and of the fact that he had asked the administrator of the center to assign her as his "private therapist — if that's alright with you?" In the second letter the petitioner reminded the addressee of his virility, advised her that he was well "endowed" and that he was sure she would enjoy "*it*" with him (emphasis original), and offered $100 for the privilege of proving all three propositions. Both psychiatrists agreed that the letters demonstrated "inappropriate" behavior, but, as Dr. Moore effectively pointed out, they did not demonstrate sexual misbehavior. There was no evidence that the petitioner had taken any action to further the desires suggested by his letters, or that those desires were uncontrolled or uncontrollable.

Dr. Moore thought it likely that "*if* [the petitioner] were involved in any sexual offense," it would be with a young child (emphasis supplied). He was not asked for, nor did he

---

[5] The judge's findings, after summarizing the Department's recommendation (see note 2, *supra*), contain the following: "7. . . . Mr. McNamara also testified that the petitioner has basically not changed in his twenty years at Bridgewater. 8. Drs. Moore and Nagler and Mr. McNamara agree that the petitioner was [an SDP] when he was originally committed to Bridgewater."

express, any opinion he might have entertained as to the likelihood that the petitioner *would be* involved in any kind of sex offence in the future. Contrast *Commonwealth* v. *Denham*, 8 Mass. App. Ct. 724, 730 (1979) (psychiatric opinion that "[h]e has needed children in the past; and I would not be surprised if, in the future, he didn't need children also"). Dr. Moore's negative answer to the question, "Do you see any change in [the petitioner's] attraction toward female children throughout his therapy?" loses all significance once it is understood (as later confirmed by Mc-Namara in his testimony) that the petitioner had not participated in any form of therapy during the three-year period prior to the § 9 hearing.[6]

Neither the Commonwealth nor the judge has pointed to any other evidence (and we have found none) material to the question whether, at the time of the hearing, the petitioner continued to suffer from a "general lack of power to control his sexual impulses . . . and . . . as a result [would be] likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires" (G. L. c. 123A, § 1). See and contrast *Anderson, petitioner*, 362 Mass. at 872, 873; *Commonwealth* v. *Denham*, 8 Mass. App. Ct. at 730; *Davis, petitioner*, 10 Mass. App. Ct. 834, 835 (1980), *S.C.*, 383 Mass. at 648; *Travers* v. *Commonwealth, supra* at 924. We conclude that the evidence was insufficient to warrant a rational trier of fact in concluding beyond a reasonable doubt that the petitioner continued to be an SDP at the time of the hearing.

The decision of the Superior Court is reversed. As the petitioner has long since served the maximum sentences imposed on him, he must be discharged from the center and from all custody, unless he is subject to other charges which are not disclosed by this record. *Andrews, petitioner*, 368

---

[6] The judge translated the quoted testimony as follows: "Dr. Moore also testified that the petitioner is still attracted to young female children."

Mass. at 485-486. *Commonwealth* v. *Travis,* 372 Mass. 238, 251 (1977).[7]

*So ordered.*

---

[7] It is obvious to anyone who studies the portions of the petitioner's record that were introduced in evidence (see, e.g., notes 1 and 2, *supra*) that for some years the Department has simply been warehousing the petitioner in the center for no better reason than that he has become institutionalized to the point that he may be unable to cope with life on the outside. At the conclusion of the present hearing both the petitioner and his counsel requested the judge to delay his decision in order to give them time to explore some form of alternative placement. That request was refused. We would hope that the parties, acting through their respective counsel, could agree on some form of constructive solution before the rescript issues. See Mass.R.A.P. 23, as amended, 367 Mass. 921 (1975).