RONALD J. POULIN, petitioner. August 20, 1986. *Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Sex offender.

In these discharge proceedings under G. L. c. 123A, § 9, as amended through St. 1966, c. 608,[1] there was a considerable split of professional authority. Two psychiatrists and the assistant administrator of the center for the treatment of the sexually dangerous at M.C.I., Bridgewater (center),[2] opined that Ronald J. Poulin was a sexually dangerous person (SDP). Two psychiatrists and a psychologist gave their opinions that he was not an SDP. The Superior Court judge who conducted the § 9 hearing found that Poulin's misconduct in sexual matters indicates a general lack of power to control his sexual impulses as evidenced by repetitive and compulsive behavior and violence against female victims [and he] is as a result likely to attack or otherwise inflict injury on objects of his uncontrolled desire." The judge denied the petition for discharge.

In a § 9 proceeding, the Commonwealth has the burden of proving beyond a reasonable doubt that the petitioner is one who suffers from a "general lack of power to control his sexual impulses . . . and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires" (emphasis omitted). *Page* v. *Commonwealth,* 13 Mass. App. Ct. 384, 387 (1982). See also G. L. c. 123A, § 1, which defines a "sexually dangerous person."[3] If, therefore, the Commonwealth produced evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the petitioner at the time of the hearing continued to be an SDP, the decision of the judge on the petition will stand. *Page* v. *Commonwealth,* 13 Mass. App. Ct. at 387. See *Davis, petitioner,* 383 Mass. 645, 650 (1981). Weighing and crediting the testimony are for the trier of fact, and we are not to substitute our judgment for that of the trial judge. *Commonwealth* v. *Walsh,* 376 Mass. 53, 60 (1978). Governed by those principles, we consider ourselves bound to affirm the decision of the Superior Court. The three witnesses who thought Poulin at the time of the hearing to be an SDP did so on the basis that he continued to deny that he had committed the sexual assaults, had made poor progress in therapy, and continued to manifest impulsive behavior. Reading the witnesses' testimony and reports generously, it could be concluded that this syndrome of denial and impulsiveness would manifest itself in compulsive and assaultive sexual behavior were Poulin free of the constraints of an institutional setting. It was not clear error for the judge to be persuaded by those opinions. See *Leavis, petitioner,* 12 Mass. App. Ct. 958 (1981).

---

[1] The statute was further amended by St. 1985, c. 752, § 1. The hearing in this case occurred, however, on July 31 and August 1, 1984. There is no suggestion that the 1985 amendment of § 9 has a bearing on the proceedings.

[2] The assistant administrator was a clinical psychologist and held a doctorate in that discipline.

[3] Section 1 was also amended by St. 1985, c. 752, § 1.

We would be doing less than our duty, however, if we failed to give voice to our unease about this case. Our concerns may assist in framing the agenda of subsequent § 9 proceedings, should they be brought forward. Poulin's outbursts of sexual aggression occurred fifteen years ago, when Poulin was eighteen years old. There were three episodes of escalating severity. The last was a rape. Since then, so far as the record discloses, there has been no "misconduct in sexual matters" as a lay person would understand the phrase. See the definition of SDP contained in G. L. c. 123A, § 1, as appearing in St. 1985, c. 752, § 1.[4] Perhaps the institutional setting in which Poulin has been confined has deprived him of the opportunity to act out sexually, although inmates of the center have found ways to make their sexual interests known. Compare *Page* v. *Commonwealth,* 13 Mass. App. Ct. at 388. On the two occasions when he escaped from the center (in each instance he had been outside the security perimeter and came back voluntarily), Poulin did not engage in any reported sexual activity.

It may be that a person trained to diagnose and predict abnormal behavior, such as a psychiatrist or psychologist, can fit the pieces together. Perhaps, as a clinical matter, past sexual misconduct, coupled with current manifestations of impulsive behavior, poor therapy response, and intellectual and emotional deficits add up to a prognosis of a person currently "likely to attack or otherwise inflict injury . . . because of his uncontrolled or uncontrollable desires." G. L. c. 123A, § 1. If so, it would be helpful to trial judges and reviewing courts if the expert witnesses explained the clinical basis for linking past sexual misconduct with present behavior to produce a diagnosis of a currently sexually dangerous person. Our criticism is directed not to the judge in this case, but to the experts, who, we think, have done an unsatisfying job of making the necessary clinical connections.

The decision of the judge denying the petition for discharge from the treatment center is affirmed.

*So ordered.*

*J. Russell Hodgdon* for the petitioner.
*Michael W. Dingle,* Assistant Attorney General, for the Commonwealth.

---

[4] The same phrase appeared in the version of § 1 applicable at the time of the discharge hearing.

