## COMMONWEALTH *vs.* RONALD BOYER.

No. 02-P-1241.

Bristol. December 3, 2003. - August 9, 2004.

Present: GREENBERG, GRASSO, & GREEN, JJ.

*Evidence,* Sex offender, Expert opinion. *Practice, Civil,* Sex offender. *Sex Offender.*

This court held that the Commonwealth may not sustain its burden of proving that a defendant is a sexually dangerous person in a G. L. c. 123A proceeding solely by relying on an expert's opinion in a preliminary report submitted at an earlier probable cause hearing and recanted at trial. [586-590]

CIVIL ACTION commenced in the Superior Court Department on August 23, 2000.

The case was heard by *Richard J. Chin,* J., and a motion for judgment notwithstanding the verdict was also heard by him.

*Bruce W. Carroll* for the defendant.

*Paul F. Walsh, Jr.,* District Attorney, for the Commonwealth.

GREENBERG, J. Can the Commonwealth sustain its burden of proving that the defendant is a sexually dangerous person in a G. L. c. 123A proceeding, solely by relying on an expert's opinion submitted at an earlier probable cause hearing and recanted at trial? We hold that it may not.[1]

The defendant timely moved for a directed verdict and for judgment notwithstanding the verdict. We examine the record for evidence from which a reasonable inference could be drawn

---

[1]General Laws c. 123A, § 1, as amended by St. 1999, c. 74, § 6, defines "sexually dangerous person" as follows:

"any person who has been (i) convicted of . . . a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility . . . ."

in favor of the Commonwealth, without weighing that evidence. See *Forlano* v. *Hughes*, 393 Mass. 502, 504 (1984); *Roddy & McNulty Ins. Agency, Inc.* v. *A.A. Proctor & Co.*, 16 Mass. App. Ct. 525, 530 (1983).

When, on August 23, 2000, the district attorney for Bristol County filed a petition to temporarily commit the defendant to the Massachusetts Treatment Center (treatment center) as a sexually dangerous person, see G. L. c. 123A, §§ 2, 12(*b*), about one month remained to be served on his three-year sentence. The defendant had been sentenced on September 22, 1998, after pleading guilty to five counts of indecent assault and battery on his two stepchildren.[2] The offenses occurred in 1997. The children, a thirteen year old boy and a twelve year old girl, alleged that the defendant had engaged them in acts of mutual masturbation, digital rape, and other inappropriate sexual behaviors. The matters were reported to the Department of Social Services (DSS), which in turn notified the Swansea police department.

At the time he committed the crimes, the defendant was employed by a private security company. He was a veteran of the Navy and a member of the Navy Reserves. He also had been employed as a warehouse worker. At thirty-nine years of age, he had been married to his wife, the children's biological mother, for about six years. Most of his life had been spent in Swansea. Other than the instant offenses, he had no serious criminal history. He claimed to have been sexually assaulted at the age of thirteen by two Boy Scout leaders.

About four months after his imprisonment at M.C.I., Concord, he was transferred to the treatment center. While participating in the treatment center's programs, the defendant's evaluations ranged from "fair to poor." Even so, with the exception of a single disciplinary report for lying to correctional staff, his course of incarceration and treatment were incident free.

In his petition to commit the defendant as a sexually danger-

---

[2]In the underlying case, the defendant pleaded guilty to five separate counts of indecent assault and battery upon a child under the age of fourteen years. Two of the counts were reduced from rape charges as part of the plea agreement. Two other identical charges were placed on file without a change of plea. The defendant was sentenced and committed for three years on two of the charges, to be followed by five years probation on the other three charges.

ous person, the district attorney reiterated some of the details of the underlying offenses involving the defendant's stepchildren and claimed that the defendant "ha[d] not yet (as of December 1999) progressed to Stage IV of the [Sexual Offender Training Program]." At the time the petition was filed, it was based on the defendant's plea of guilty to five counts of indecent assault and battery involving his stepchildren and the expectation that additional evidence of his sexual dangerousness would be provided. Contained in the petition was a prayer seeking an examination by two qualified examiners pursuant to the statute.

Prior to the probable cause hearing required by § 12(c) of the statute,[3] the district attorney retained Dr. Paul Zeizel to conduct a preliminary evaluation of the defendant. Zeizel was a licensed psychologist, qualified under the statute, but his examination was not one that follows after a finding of probable cause under § 13(a) of the statute.

On November 10, 2000, Zeizel met with the defendant at the treatment center. After Zeizel warned the defendant that anything the defendant told him would not be privileged or confidential, see *Commonwealth* v. *Lamb*, 365 Mass. 265, 269-270 (1974), the defendant, on advice of counsel, chose not to speak with Zeizel. Consequently, Zeizel's seven-page report, dated November 27, 2000, was based only on his review of records provided by the district attorney's office. Those records included the instant petition, a Swansea police report dated

---

[3]Following a petition by the Commonwealth to commit a person as sexually dangerous pursuant to G. L. c. 123A, § 12(b), a judge is required to hold a hearing to "determine whether probable cause exists to believe that the person named in the petition is a sexually dangerous person." G. L. c. 123A, § 12(c). At the § 12(c) hearing, the subject of the petition has the right to be represented by counsel, to present evidence, and to cross-examine the Commonwealth's witnesses. G. L. c. 123A, § 12(d). If probable cause is found, the person is committed to the treatment center for up to sixty days and examined by two "qualified examiners," who must file with the court a written report of their examination, diagnosis, and recommendation no later than fifteen days prior to the expiration of the sixty-day period. G. L. c. 123A, § 13(a). Following the filing of the qualified examiners' reports, the district attorney has fourteen days within which to petition the court for a trial on the question whether the person is sexually dangerous. G. L. c. 123A, § 14(a). If a petition for trial is filed, the trial must be held within sixty days, absent a continuance for good cause or in the interest of justice. *Ibid.* The reports of the qualified examiners are admissible at trial. G. L. c. 123A, § 14(c).

December 11, 1997, a child abuse and neglect report dated November 19, 1997, a correctional department classification form prepared on December 17, 1999, and records procured from the Massachusetts criminal history systems board dated March 23, 2000.

Relying on what he candidly described as "nominal" information, the sum and substance of Zeizel's report was that the defendant had symptoms consistent with pedophilia and that he "remains a sexually dangerous person." In January of 2001, based on that report, a judge of the Superior Court found probable cause to believe that the defendant was sexually dangerous and temporarily committed him to the treatment center for examination and diagnosis pursuant to G. L. c. 123A, § 13(*a*). During the ensuing sixty-day commitment, the defendant was examined and interviewed by two qualified examiners, Dr. Niklos Tomich and Dr. Michael J. Murphy. In lengthy and detailed reports filed with the court, they each concluded, but for different reasons, that the defendant was not a sexually dangerous person under the statute.

Tomich opined that the defendant exhibits symptoms of pedophilia, as defined in the Diagnostic and Statistical Manual of Mental Disorders, but that his treatment and rehabilitation had progressed to the point where there was no behavioral problem that would require confinement to a secure facility. He emphasized the defendant's positive relationship with his wife and family and the fact that upon his release, DSS would provide "a safe and orderly transition of [the defendant] back in the household" prior to any reunification with his family.

Murphy did not think that the defendant's profile met the criteria for a diagnosis of pedophilia because his offenses involved pubescent children and were confined to his two stepchildren. He saw the defendant's profile as "primarily consistent with incest type of finding" and revealing "no predilection for deviant sexual arousal."

On April 27, 2001, a jury trial commenced. Another Superior Court judge presided at the trial. Tomich and Murphy were called by the Commonwealth to testify in their capacity as qualified examiners. They adhered to their written reports that, in their respective opinions, the defendant was not a sexually

dangerous person. In addition, the Commonwealth called Zeizel as an expert witness. Over the defendant's objection, the written report that he had prepared on November 27, 2000, was admitted into evidence. However, in his testimony, Zeizel recanted the opinion that the defendant remained sexually dangerous and agreed with Tomich and Murphy that the defendant failed to meet the criteria for indefinite commitment to the treatment center. Zeizel still adhered to his diagnosis of pedophilia but, as a result of interviews with the defendant and his wife, did not think it likely that he would reoffend with the children.[4] He also believed the defendant's wife (the children's biological mother) that the defendant had not digitally penetrated either child. The defendant had also provided Zeizel with some sex offender treatment reports that reenforced his changed opinion. These factors, along with becoming cognizant of the conditions of the defendant's probation, led Zeizel to conclude that the defendant was not sexually dangerous as of the time of the jury trial. The Commonwealth called two other witnesses only for the purpose of introducing records of the defendant's treatment while confined at the treatment center. At the close of the Commonwealth's evidence, the defendant filed a motion for a directed verdict, which was denied by the judge.

The defendant called an expert witness, Dr. Leonard Allen Bard, a licensed psychologist, who had performed several hundred evaluations regarding sexual dangerousness. Based upon his interview of the defendant and a review of pertinent records, he too concluded that the defendant was not a sexually dangerous person. On May 1, 2001, the jury returned a verdict that the defendant was a sexually dangerous person as defined by the statute, and, thereafter, the judge ordered him committed to the treatment center. Subsequently, the judge denied the defendant's motion for judgment notwithstanding the verdict (judgment n.o.v.), and the defendant now appeals the consequent judgment in favor of the Commonwealth.[5]

In urging reversal, the defendant questions the admissibility

---

[4]Zeizel credited the defendant's denial that he had ever engaged in sexual intercourse with the children.

[5]On June 26, 2001, the defendant filed a motion for stay of his commitment to the treatment center, which was denied by the trial judge. The defendant

of Zeizel's preliminary report and the propriety of the Commonwealth calling Murphy and Tomich as expert witnesses when their ultimate opinions favored him. Moreover, the defendant argues that the evidence taken in the light most favorable to the Commonwealth is insufficient, as matter of law, to support a finding of sexual dangerousness as defined by the statute.

Zeizel's preliminary report was admissible under our decisional law. See *Commonwealth* v. *Butler*, 346 Mass. 147, 149, cert. denied, 375 U.S. 912 (1963); *Commonwealth* v. *Lamb*, 372 Mass. 17, 20-22 (1977); *Commonwealth* v. *Childs*, 372 Mass. 25, 29-30 (1977). The testimony of Murphy and Tomich was also admissible as expert testimony. Nevertheless, the evidence in this case is inadequate to support the jury's verdict that the defendant is a sexually dangerous person, and this case should not have been submitted to the jury.

The defendant claims that there was no expert testimony or other evidence adduced at trial that establishes that he currently suffers from a mental abnormality or personality disorder from which the jury could infer the likelihood of his engaging in sexual offenses if not confined to a secure facility. See G. L. c. 123A, § 1. For its part, the Commonwealth contends that its evidence, which included the findings of at least two experts that the defendant was a pedophile and Zeizel's preliminary opinion that the defendant "still remains a sexually dangerous person," was sufficient for the jury to conclude that the defendant met the criteria for commitment under the statute.

Contrary to the defendant's contention, we conclude that the evidence at trial was sufficient for the jury to find that the defendant suffered from pedophilia. We disagree, however, that the expert testimony offered by the Commonwealth was sufficient to satisfy the requirement of § 1, in order to define the defendant as a sexually dangerous person.

We repeat what we said in *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 482, 489 (2003), that expert testimony is required to prove sexual dangerousness. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 510-511 (2000). As the *Bruno* court noted,

then sought and was granted relief by a single justice of this court. So far as appears, the stay remains in effect.

"[w]hether a person suffers from a mental abnormality or personality defect, as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense, are matters beyond the range of ordinary experience and require expert testimony." *Id.* at 511. Although the evidentiary issue in the *Bruno* case arose prior to trial and during a G. L. c. 123A, § 12(*c*), probable cause proceeding, we have since extended the requirement to include trials. *Commonwealth* v. *Dube*, 59 Mass. App. Ct. at 482-483.

The facts in this case are similar to those in *Dube*, which we decided after the briefs were filed in the present case. In *Commonwealth* v. *Sepulveda*, the companion case to *Dube*, the Commonwealth initially supported its petition for commitment with a qualified examiner's report opining that the defendant, Sepulveda, was sexually dangerous. "During his ensuing commitment, Sepulveda was examined by two qualified examiners who then filed with the court reports in which they opined that he was not sexually dangerous. The Commonwealth's examiner, who had based his original opinions solely on analysis of records pertaining to Sepulveda's case, then interviewed Sepulveda. Following the interview, the examiner changed his opinion and joined the two other qualified examiners [as well as two additional psychologists who examined Sepulveda] in concluding that Sepulveda was not sexually dangerous." *Id.* at 480. A Superior Court judge dismissed the petition on the grounds that the Commonwealth could not meet its burden of proof at trial. *Ibid.* On appeal to this court, the Commonwealth argued that expert testimony including an opinion that the defendant was sexually dangerous was not required. *Id.* at 486 n.17. We disagreed, noting that "one cannot prove a case by producing opinions directly contradicting the conclusion one seeks to have the fact-finder reach. . . . [T]he Commonwealth cannot prove that a person is sexually dangerous by producing the expert testimony of someone who opines that he is not." *Id.* at 487.

Moreover, we commented that "no reasonable person could base a conclusion that Sepulveda was sexually dangerous on an opinion withdrawn by its originator after his discovery that he had not taken into account all of the facts." *Id.* at 489 n.19. With the same question now presented here, we hold that an

expert's opinion that a defendant is likely to reoffend, formulated prior to a G. L. c. 123A, § 12, hearing and then recanted by the same expert witness, is not sufficient to satisfy the Commonwealth's burden of proving beyond a reasonable doubt that the defendant requires indefinite confinement in the treatment center as a sexually dangerous person.

The question here boils down to whether, after viewing the evidence (and all permissible inferences) in the light most favorable to the Commonwealth, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of sexual dangerousness as defined by G. L. c. 123A, § 1. In his memorandum of decision denying the defendant's motion for judgment n.o.v., the judge, referring to Zeizel's inconsistent opinion, invoked the familiar maxim that "the jury [were] free to credit as much or as little of the evidence as [they] chose," citing *Tosti* v. *Ayik*, 394 Mass. 482, 494 (1985). The judge also based his decision on the proposition that Zeizel's preliminary "report suffice[d] as a source 'anywhere in the evidence' from which the jury reasonably could conclude that the [defendant] met the criteria for commitment as a sexually dangerous person." However, no rational trier of fact could have found the preliminary report sufficient to prove sexual dangerousness beyond a reasonable doubt in light of the current opinions of all of the experts who testified at trial, including Zeizel, that the defendant was not a sexually dangerous person who was likely to reoffend unless confined to the treatment center. *Dube, petitioner, supra* at 489 n.19.

Moreover, contrary to the judge's intimation, Zeizel's preliminary report did not explain the "clinical basis for linking past sexual misconduct with present behavior to produce a diagnosis of a currently sexually dangerous person." *Poulin, petitioner*, 22 Mass. App. Ct. 988, 989 (1986). Zeizel's initial opinion was wholly based on the defendant's plea of guilty to the underlying offenses and his diagnosis of pedophilia, neither of which satisfy the statutory requirement that the defendant is a person "likely to engage in sexual offenses if not confined to a secure facility." In *Poulin*, we suggested that it would be helpful to trial judges and reviewing courts if the expert witnesses "fit the pieces together." *Ibid.* In his trial testimony, Zei-

zel followed our suggestions to the letter. He made it clear that he no longer considered the defendant sexually dangerous and gave substantial reasons for his change of mind: the interviews with the defendant and his wife, the strict probationary conditions to his release, and the defendant's intent to continue treatment.

In this case, the jury had to make a substantial leap with respect to the essential elements at issue. Zeizel's withdrawal of his earlier opinion created an evidentiary gap in the Commonwealth's case that was not filled with any other evidence sufficient to meet the burden of proof beyond a reasonable doubt. See *Commonwealth* v. *Boucher*, 438 Mass. 274, 277 (2002). Given the speculative nature of the Commonwealth's theory and the lack of proof at trial, the case should not have been submitted to the jury.

A judgment dismissing the petition is to be entered in the Superior Court.

*So ordered.*