NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-311

COMMONWEALTH

vs.

WILLIAM REDMON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury found that the respondent was a sexually dangerous person, and he was civilly committed to the Massachusetts Treatment Center. The respondent appeals, challenging the sufficiency of the evidence, the admission of evidence of his Static-99R risk category label, the judge's failure to give a requested jury instruction, and the judge's response to a jury question. We affirm.

Background. In 1983, at age twenty-two, the respondent was convicted in Michigan of criminal sexual conduct, fourth degree, after he grabbed a woman between her legs. In 1992 the respondent pleaded guilty in Massachusetts to eight counts of indecent assault and battery on a child after he raped a five-

year old girl anally and vaginally on multiple occasions. While on probation for that offense in 1993, the respondent picked up a woman in his car, touched her breast and vaginal area, grabbed her by the throat, and tried to force her to perform oral sex. He was convicted of kidnapping and indecent assault and battery on a person over fourteen as a result of this incident.

In 1999, following the respondent's release from incarceration, he began sexually abusing a five-year old female victim. He inappropriately touched the victim, kissed her, and forced oral sex on her multiple times until she turned eight years old. The victim disclosed the abuse when she was fourteen, which led to the respondent's 2010 convictions of four counts of rape of a child under sixteen and six counts of indecent assault and battery on a child under fourteen, subsequent offense.

Prior to the respondent's release on the 2010 convictions, the Commonwealth petitioned to commit him as a sexually dangerous person. After an order of temporary commitment issued, the respondent was adjudicated sexually dangerous in 2022 and has remained committed since.

Discussion. 1. Sufficiency of the evidence. In assessing the sufficiency of the evidence in a sexually dangerous person proceeding, we review the evidence, and all reasonable inferences therefrom, in the light most favorable to the

2

Commonwealth.  See Commonwealth v. Cahoon, 86 Mass. App. Ct. 266, 268 (2014).  The Commonwealth has the burden of proving beyond a reasonable doubt that the respondent "has been convicted of a sexual offense, suffers from a mental abnormality or personality disorder that renders him a menace to the health and safety of others, and is likely to engage in sexual offenses if not confined."  Commonwealth v. Fay, 467 Mass. 574, 580 (2014).  The only element at issue here is whether the respondent would be likely to sexually offend if not confined to a secure facility.

There was ample evidence to support the jury's verdict with respect to that element.  The evidence established that, dating back to the 1980s, the respondent committed repetitive and aggressive acts of sexual misconduct, including against female children, despite his frequent arrests and incarceration.  The jury heard testimony that as recently as 2022, the respondent admitted to still having deviant thoughts about prepubescent girls and remained in the early stages of sex offender treatment.  In addition, the evidence showed that the respondent had violated his probation by assaulting a woman and had failed to register as a sex offender.  The jury could reasonably conclude from this evidence that the respondent was likely to reoffend sexually when "free of the constraints of an

3

institutional setting." Poulin, petitioner, 22 Mass. App. Ct. 988, 988 (1986).

Moreover, the jury were entitled to credit the opinions of the qualified examiners, Dr. Kaitlyn Peretti and Dr. Gregg Belle, regarding the respondent's sexual dangerousness. See Commonwealth v. Fusi, 91 Mass. App. Ct. 901, 902 n.5 (2017). Both qualified examiners opined, based on the respondent's criminal history, pedophilia, antisocial tendencies, and lack of progress in treatment, that the respondent met the statutory definition of a sexually dangerous person. Considering all the evidence and testimony presented, the jury could have concluded beyond a reasonable doubt that the respondent was sexually dangerous. See Cahoon, 86 Mass. App. Ct. at 268-269.

To the extent the respondent asserts that the qualified examiners failed to consider his probation conditions upon release, the record does not support his assertion. Neither Dr. Peretti nor Dr. Belle discussed probation as a protective factor in their reports because, when they wrote the reports, the respondent was subject to lifetime community parole. Just a few months before trial, the respondent successfully moved to vacate his lifetime community parole sentence, and he was resentenced to five years of probation. Dr. Peretti and Dr. Belle were then questioned about the probation conditions at trial, and both concluded that the respondent was still sexually dangerous. Dr.

4

Peretti testified that "the risk that [the respondent] currently presents outweighs the protection that he has from [his] probation" because of his lack of progress in sex offender treatment.  Likewise, Dr. Belle did not view probation "as strong or as robust of a risk mitigating factor" based on the respondent's prior "inability to comply with conditions of probation."  The record therefore belies the respondent's claim that the qualified examiners failed to take into account his probation conditions.

We are also unpersuaded by the respondent's contention that a one in six chance of reoffense, which the respondent derived from his Static-99R test results,[1] was insufficient to establish his sexual dangerousness.  "While the Commonwealth is required to prove beyond a reasonable doubt that a person is sexually dangerous, . . . it is not required to prove to any particular mathematical quantum the likelihood of his committing another sexual offense."  Commonwealth v. Boucher, 438 Mass. 274, 277 (2002).  See Commonwealth v. Bradway, 62 Mass. App. Ct. 280, 290-291 (2004), quoting Boucher, supra ("likely" as used in definition of sexually dangerous person "does not mean 'more

---

[1] "The Static-99R is an actuarial tool, designed to predict the recidivism risk of sexual offenses in adult male sex offenders who have been convicted of at least one sexual offense."  Commonwealth v. George, 477 Mass. 331, 335 n.2 (2017).

likely than not'").  It was for the jury to decide what weight to give the evidence relating to the respondent's sexual dangerousness.  See In re Hill, 422 Mass. 147, 156 (1996).

2.  Static-99R results.  The respondent moved in limine to exclude any reference to his Static-99R risk category label of "above average risk" to reoffend on the ground that it would violate the holding of Commonwealth v. George, 477 Mass. 331, 341-342 (2017).  The judge allowed the motion pursuant to the parties' agreement, but the risk category label was admitted, it appears inadvertently, through written reports entered in evidence.  The respondent argues that this was reversible error.

In George, 477 Mass. at 339, the Supreme Judicial Court held that the Static-99R risk of reoffense categories that were then in place "lack[ed] probative value in the sexual dangerousness calculus and should not be admitted at trial."  At the same time, the court recognized that new risk category labels had been created to "resolve the shortcomings" of the older labels.  Id. at 340 n.8.  The court noted that these new labels "have sufficiently improved conceptual coherence and have sufficient empirical support to replace the original categories" (quotations omitted).  Id.

Relying exclusively on George, the respondent contends that the new risk category labels, which are at issue here, are inadmissible.  George does not support his argument, however,

because the court expressly took "no position on the admissibility of [the new] labels." Id. Furthermore, even assuming error, the respondent has not demonstrated prejudice. His "above average risk" to reoffend was never testified to or argued by either party and was referenced only twice in the written reports, which were part of almost two hundred pages of exhibits. In light of this, and also considering the strength of the Commonwealth's case, we are satisfied that any error did not materially influence the jury. See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

3. Proposed jury instruction. Prior to trial the respondent requested the following jury instruction: "You must be convinced beyond a reasonable doubt that the only way to prevent the defendant from engaging in future sexual offenses is to confine him to a 'secure facility' and that superior court probation is not sufficient." After hearing argument, the judge denied the proposed instruction "in this form" because it appeared "to be a factual issue as to protective measures about probation."

We discern no error. A judge's refusal to give a requested jury instruction is reversible error only if the instruction is "(1) substantially correct, (2) was not substantially covered in the charge given to the jury, and (3) concerns an important point in the trial so that the failure to give it seriously

7

impaired the [respondent's] ability to effectively present a given defense." Commonwealth v. DeGennaro, 84 Mass. App. Ct. 420, 431 (2013), quoting Commonwealth v. Adams, 34 Mass. App. Ct. 516, 519 (1993). The instruction requested by the respondent was not substantially correct because it effectively created a fourth element requiring the Commonwealth to prove that probation could not prevent the respondent from offending. See Bradway, 62 Mass. App. Ct. at 291 (sexually dangerous person statute does not require consideration of less restrictive alternatives to commitment). Because the requested instruction would have misstated the Commonwealth's burden of proof, the judge correctly declined to give it.[2] See Commonwealth v. Fano, 400 Mass. 296, 305-306 (1987).

Moreover, the issue of probation was substantially covered by the jury charge. In particular, the judge instructed that:

> "In deciding whether the Commonwealth has proved that [the respondent] will likely commit future sexual offenses if not confined to the treatment center, you may consider the seriousness of the threat and harm, the relative certainty of the anticipated harm, and the potential that successful intervention not involving confinement may keep [the respondent] from committing future sexual offenses."

Unlike the respondent's requested instruction, this instruction accurately stated the law. See Commonwealth v. Castillo, 55 Mass. App. Ct. 563, 568 (2002) (jury charge accurately stated

---

[2] The different formulation of the instruction argued for by the respondent on appeal suffers from the same infirmity.

8

elements of crime, and judge properly rejected defendant's proposed instruction, which "would have effectively constrained the definition of the offense"). The jury charge as given also did not impair the respondent's defense; it permitted him to argue that probation supervision was an "intervention not involving confinement" that would prevent him from offending.

4. Answer to jury question. Before trial the Commonwealth requested a modification of the jury instructions to clarify that any potential personality disorder of the respondent should not be considered in determining his sexual dangerousness. With the consent of both parties, the judge removed any reference to personality disorders from the jury instructions. The Commonwealth did not present any evidence that the respondent had a personality disorder, but one of the respondent's experts testified that he met the diagnostic criteria for antisocial personality disorder. During deliberations the jury then asked if they could "obtain a copy of the DSM5 criteria for antisocial personality disorder." Without objection from either party, the judge responded by informing the jury that they "must rely on the evidence and exhibits presented at trial."

The respondent contends, for the first time on appeal, that the judge should have answered the jury's question by instructing them that they could not "find [the respondent] sexually dangerous based on a finding that he has a personality

9

disorder." We are unpersuaded. The proper response to a jury question lies "within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly." Commonwealth v. Waite, 422 Mass. 792, 807 n.11 (1996). Here, the judge's answer to the jury's question was appropriate. Indeed, the respondent does not point to any legal error in the answer. Furthermore, the respondent has failed to demonstrate a substantial risk of a miscarriage of justice given that all four testifying experts agreed that he suffers from the mental abnormality of pedophilia.

For the same reasons, we are unpersuaded by the respondent's claim that his counsel was ineffective for failing to request the aforementioned instruction in response to the

jury's question.  See Commonwealth v. Tyler, 493 Mass. 752, 762 (2024) ("counsel could not have been ineffective for failing to request an instruction to which the defendant was not entitled").

Judgment affirmed.

By the Court (Massing, Shin & D'Angelo, JJ.[3]),

Clerk

Entered: June 28, 2024.

---

[3] The panelists are listed in order of seniority.

11